## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| PROJECT ON PREDATORY STUDENT LENDING OF THE LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br> *Defendant*. | Civil Action No. 2:17-cv-00210-NBF <br><br> Hon. Nora Barry Fischer <br><br> *(Electronic Filing)* |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Through this lawsuit, plaintiff seeks to expand the Freedom of Information Act ("FOIA") to require federal agencies to produce materials that (i) they receive from, and intend to return to, private parties in response to civil discovery requests and (ii) that have not been integrated into any federal agency's file or record system. Specifically, plaintiff here seeks documents that a private party, Education Management Corporation and its subsidiaries and affiliates (collectively, "EDMC"), produced to the United States Attorney's Office for the Western District of Pennsylvania in discovery in a significant False Claims Act case. The vast majority of the information produced to the government in that litigation was contained on external electronic media, consisting predominantly of hard drives, but which also included CDs and DVDs (collectively referred to as "the Hard Drives"). Those Hard Drives, along with a high percentage of the documents they contain, were labeled as subject to at least one of the two protective orders governing that litigation. If those Hard Drives, which were not integrated into any federal agency's files or record system, are deemed to be agency records – a novel holding – then FOIA

will be transformed from a tool to learn about the activities, operations, and structure of federal agencies into a device to pry into any information that the federal government receives from private parties in civil litigation. Such an outcome is inconsistent with the purpose of FOIA, and it cannot be justified by any of the legal standards used to determine which documents in an agency's possession constitute "agency records" subject to FOIA. For that reason, summary judgment should be entered for defendant with respect to all of the materials that the United States Attorney's Office for the Western District of Pennsylvania received in discovery from EDMC and did not integrate into its files or record system because that information belongs to EDMC.

Alternatively, the sheer volume of the information contained on the Hard Drives – 20 million documents, consisting of 145 million pages, and comprising nine terabytes of data – makes plaintiff's FOIA request unduly burdensome. It is not reasonable to expect a federal agency to have the technological or human resources to process, upload, search, and review, that amount of information. On this basis as well, summary judgment should be entered so that the government need not incur the undue burden of responding to plaintiff's FOIA request.

Beyond the Hard Drives, the government searched for other information responsive to plaintiff's FOIA request. That search was reasonably calculated to locate all responsive records, and therefore it was adequate. In addition, the documents discovered as a result of that search – those uploaded into an electronic file folder from a CD that was produced under different file specifications than the Hard Drives – cannot be disclosed. Portions of some of those documents reflect personally identifiable information about applicants and students at EDMC and are subject to the privacy protections of FOIA Exemption 6. All of those documents have been

designated by EDMC as subject to one or more protective orders and/or are under seal, and therefore they cannot be produced pursuant to FOIA.

For these reasons, elaborated below, the government is entitled to summary judgment in this action.

## BACKGROUND

This FOIA action seeks documents that the Civil Division of the United States Attorney's Office for the Western District of Pennsylvania (the "USAO") requested and received from EDMC in discovery in a False Claims Act case, *United States ex rel. Washington v. Education Management LLC*, No. 2:07-cv-461 (W.D. Pa.) (the "EDMC Litigation"). In that litigation, the USAO served numerous discovery requests upon EDMC, and in response to those requests, EDMC made a series of eleven rolling productions between October 15, 2013, and September 15, 2014, in which it provided materials on external electronic media, consisting predominantly of hard drives, but which also included CDs and DVDs (collectively referred to as "the Hard Drives"). *See* Def.'s Concise Statement of Material Facts (hereafter "SMF") ¶ 1. The Hard Drives altogether contained over 20 million documents, comprising over nine terabytes of electronically stored information (in compressed form), which, if printed, would exceed 145 million pages. *See id.* ¶¶ 9, 20. Each of those Hard Drives bore an external label indicating that it was subject to the two protective orders entered in the EDMC Litigation: the Confidentiality Protective Order and the FERPA Protective Order. *See id.* ¶ 4. After receiving a Hard Drive from EDMC, the USAO would immediately transfer it to relator's counsel at McKool Smith for uploading onto an electronic document review platform. *See id.* ¶ 7. In addition to the materials produced on the Hard Drives, EDMC produced one CD containing approximately 3600 pages of documents on extremely short notice to address potential spoliation concerns at one of EDMC's subsidiaries, the Art Institute of Dallas. *See id.* ¶ 10. That CD (the "AI Dallas CD") was

externally labeled to indicate that it was subject to both protective orders governing the EDMC Litigation. *See id.* ¶ 11. The electronically stored information on the AI Dallas CD did not conform to the specifications for production of electronically stored information governing the EDMC Litigation, and the AI Dallas CD was not transferred to relator's counsel for uploading onto a document review platform. *See id.* ¶ ¶ 14-15. Rather, given the relatively small number of documents it contained and the format of those documents, the contents of the AI Dallas CD were instead uploaded onto the electronic case file on Deputy Chief Christy C. Wiegand's network directory. *See id.* ¶ 16. None of the electronically stored information produced – either on the Hard Drives or the AI Dallas CD – was encoded with metadata to enable any party to identify the precise discovery request to which the specific file corresponded. *See id.* ¶¶ 3, 13.

Plaintiff's FOIA request, dated June 20, 2016, did not seek all of the information that the USAO received from EDMC in discovery – the universe consisting of the Hard Drives and the AI Dallas CD – instead, it sought information produced in response to 24 specific discovery requests. *See* SMF ¶¶ 1-2, 10. Plaintiff's FOIA request post-dated the settlement of the EDMC Litigation, which occurred on November 16, 2015, by over seven months. *See id.* ¶ 17. On the date of plaintiff's discovery request, the electronic document review platform had been taken down, and the McKool Smith law firm had returned the Hard Drives that it did not previously destroy to the USAO. *See id.* ¶ 20. Without the electronic document review platform, the USAO had no ready ability to read or access those Hard Drives, and it placed them in a room for return to counsel for EDMC to satisfy its obligations under the protective orders. *See id.* ¶ 21. By contrast, at the time of plaintiff's FOIA request, the information from the AI Dallas CD had been uploaded into a file folder within the electronic case file on Deputy Chief Christy C. Wiegand's network directory, and those files remain there. *See id.* ¶ 21.

In responding to plaintiff's FOIA request, defendant took different actions for the Hard Drives and the AI Dallas CD. Because the Hard Drives were not agency records subject to FOIA, defendant did not search the Hard Drives for documents responsive to the 24 discovery requests identified by plaintiff. Nor would it have been feasible for defendant to do so: defendant does not have ready access to a document review platform that would enable the processing, uploading, and hosting of the 20 million electronically stored files. *See* SMF ¶ 23. Likewise, defendant does not have the human resources to review document-by-document 20 million electronically stored files to determine which are responsive to plaintiff's FOIA request. *See id.* ¶¶ 23. With respect to the files uploaded from AI Dallas CD, defendant reviewed each of those under FOIA, and as indicated on the *Vaughn* index, many of those files contain personally identifiable information about students, for which defendant now asserts Exemption 6 to protect the students' personal privacy. *See id.* ¶ 41. Each of the files from the AI Dallas CD, moreover, was also designated as being subject to one or both of the protective orders entered in the EDMC Litigation or was under seal. *See id.* ¶¶ 11-12. For those reasons, as indicated on the *Vaughn* Index, defendant has logged, but has not produced any of the information on the AI Dallas CD in response to plaintiff's FOIA request.

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 56(c), defendant, United States Department of Justice, is entitled to summary judgment in this Freedom of Information Act suit. Based on the declarations and the *Vaughn* Index, there is no "no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and defendant has demonstrated all of the elements of its defenses: (i) the Hard Drives sought by plaintiff do not constitute agency records subject to FOIA, and (ii) even if they were agency records, plaintiff's request for information from the Hard Drives is unduly burdensome; and (iii) defendant has conducted a (more than) adequate search for records

responsive to plaintiff's FOIA request; and (iv) the items identified on the *Vaughn* Index have been properly shielded from public disclosure due to considerations of personal privacy and court orders. For these reasons, defendant is entitled to judgment as a matter of law.

## I. PLAINTIFF HAS NO RIGHT UNDER FOIA TO THE HARD DRIVES.

### A. PLAINTIFF'S FOIA REQUEST IS INCONSISTENT WITH THE STATUTORY PURPOSES OF THE FREEDOM OF INFORMATION ACT.

FOIA seeks to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also Gilmore v. U.S. Dep't of Energy*, 4 F. Supp. 2d 912, 916 (N.D. Cal. 1998). To achieve that objective, FOIA provides a mechanism "to permit access to official information." *EPA v. Mink*, 410 U.S. 73, 80 (1973), *superseded by statute*, Pub. L. No. 93-5-202, 88 Stat. 1561, *as recognized in CIA v. Sims*, 471 U.S. 159, 189 (1985). The Supreme Court has emphasized, however, that FOIA's purpose does not require disclosure of all information within a federal agency's custody, but only non-exempt information that reveals the agency's execution of its mission and duties:

> Official information that sheds light on an agency's performance of its statutory duties falls squarely within [the FOIA's] statutory purpose. That purpose, however is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about the agency's own conduct.

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989);

*See Tax Analysts v. U.S. Dep't of Justice*, 913 F. Supp. 599, 602 (D.D.C. 1996) ("FOIA promotes the disclosure of information that will inform the public about what the executive branch is doing; that is, to reveal 'official information' about the structure and operation of agencies." (quoting *Reporters Comm.*, 489 U.S. at 772)). As it has been observed, Congress did not intend

the FOIA to be a means of passing along officially collected information to academic researchers or others who claim to have a socially useful for that information:

> No statement was made in Congress that the Act was designed for a broader purpose such as making the government's collection of data available to anyone who has any socially useful purpose for it. For example, it was never suggested that the FOIA would be a boon to academic researchers, by eliminating their need to assemble their own data which the government had already collected.

*See Reporters Comm.*, 489 U.S. at 773 n.20 (quoting Comment, the Freedom of Information Act's Privacy Exception and the Privacy Act of 1974, 11 HARV. CIV. RTS. – CIV. LIBERTIES L. REV. 596, 608 (1976)). In particular, the Supreme Court has specifically emphasized that FOIA was "fundamentally designed to inform the public about agency action and not to benefit private litigants," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 144 n.10 (1975) (emphasis added), and that "FOIA was not intended to function as a private discovery tool," *Robbins Tire*, 437 U.S. at 242. *See also Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Discovery for litigation purposes is not an expressly indicated purpose of the Act."); *Neary v. FDIC*, 104 F. Supp. 3d 52, 58 (D.D.C. 2015) (explaining that "plaintiff's interest in gathering information for use in civil litigation he seeks to initiate is not sufficient to give rise to a public need for the information"). In sum, the "core purpose of the FOIA" is to "contribut[e] *significantly* to public understanding of the operations or activities of government," *Reporters Comm.*, 489 U.S. at 775 (quoting 5 U.S.C. § 552(a)(4)(A)(iii) (emphasis added)), and therefore "satisfying curiosity about the internal decisions of private companies is not the aim of FOIA." *Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 928 (D.C. Cir. 2011).

Because plaintiff's FOIA request seeks seismic quantities of information about EDMC's business practices from EDMC's own documents that EDMC produced in discovery to the USAO, plaintiff's request will not advance the purpose of FOIA: such information will not realistically shed light on the activities, functioning, operations, or structure of defendant.

**B.** **THE HARD DRIVES DO NOT CONSTITUTE "AGENCY RECORDS" SUBJECT TO FOIA.**

FOIA requires federal agencies to search for and make available "agency records" to a member of the public upon request, *see* 5 U.S.C. § 552(a)(3), and FOIA provides a cause of action for requestors to seek production of improperly withheld "agency records," *see id.* § 552(a)(4)(B). Despite the centrality of the term "agency records," FOIA does not define that term. *See Forsham v. Harris*, 445 U.S. 169, 178 (explaining that Congress limited FOIA's scope to "agency records," but did not define "agency records"); *Cause of Action v. Nat'l Archives & Records Admin.*, 753 F.3d 210, 216 (D.C. Cir. 2014) ("FOIA does not define 'agency records' . . . ."); *cf.* 5 U.S.C. § 552(f)(1) (defining "agency"); *id.* § 552(f)(2) (defining "record," using the undefined term "agency records").

The Supreme Court has provided two general requirements for a document to be an "agency record." First, the document must be "created or obtained" by an agency. *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989); *see also Aguiar v. DEA*, 865 F.3d 730, 735 (D.C. Cir. 2017). Second, "the agency must be in control of the requested materials at the time the FOIA request is made." *Tax Analysts*, 492 U.S. 136, 145 (1989); *see also Aguiar*, 865 F.3d at 735. The USAO did not create the Hard Drives, but it did obtain them from EDMC. *See* SMF ¶ 2. Therefore, the key issue here is whether the USAO had "control" of the Hard Drives at the time of plaintiff's FOIA request, which was dated June 20, 2016. *See id.* ¶ 18.

The Supreme Court has provided "only general guidance to what it meant by 'control.'" *Tax Analysts*, 913 F. Supp. at 602. For an agency to have control of documents under the FOIA, the requested materials "must have come into the agency's possession in the legitimate conduct of its official duties." *Tax Analysts*, 492 U.S. at 144. But the Supreme Court did not contemplate that condition to be sufficient for control because it later added that "[t]he control

8

inquiry focuses on an agency's possession of the requested materials, not on its power to alter the content of the materials it receives." *Id.* at 147.

The Third Circuit has not provided any further definition to the Supreme Court's notional conception of "control" for purposes of FOIA, but the D.C. Circuit, which handles the highest volume of FOIA cases, has articulated three different tests for an agency's "control" of its records: (i) the *Tax Analysts* four-factor test; (ii) the *Burka* four-factor test; and (iii) a totality of the circumstances test.

The tests for control articulated in *Tax Analysts* and *Burka* are based upon the same four factors:

(1)     the intent of the document's creator to retain or relinquish control over the record;

(2)     the ability of the agency to use and dispose of the record as it sees fit;

(3)     the extent to which agency personnel have read or relied upon the document; and

(4)     the degree to which the document was integrated into the agency's record systems or files.

*Burka v. HHS*, 87 F.3d 508, 515 (D.C. Cir. 1996) (quoting *Tax Analysts v. DOJ*, 845 F.2d 1060, 1069 (D.C. Cir. 1988)).  The central difference between these two four-factor tests is that *Tax Analysts* required all of the factors to favor agency control over the documents, while *Burka* contemplated a balancing and weighing of the four factors.  *See Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 220 (D.C. Cir. 2013) ("In some cases, we have heeded the suggestion in *Tax Analysts*, finding that documents were not 'agency records' when fewer than all four factors pointed in that direction.  In other cases, we have found that documents were 'agency records' even though fewer than four factors indicated as much."); *Tax Analysts*, 845 F.2d at 1069 (requiring "all four factors to be present" for an agency to have control over a document).

The four-factor test is not controlling. Both variations are based on the D.C. Circuit's decision in *Tax Analysts*, which was affirmed by the Supreme Court, but without adopting four-factor test that the D.C. Circuit relied upon. *Compare Tax Analysts*, 492 U.S. 136 (1989), *with Tax Analysts*, 845 F.2d 1060 (D.C. Cir. 1988). Moreover the D.C. Circuit has not been shy in pointing out the vagueness of the four-factor test, especially under the *Burka* variation, noting that the four factors have "considerable indeterminacy," *Judicial Watch*, 726 F.3d at 220, and are "problematic," *Cause of Action*, 753 F.3d at 214. *See also Edelman v. SEC*, 172 F. Supp. 3d 133, 149 ("The continuing vitality of the four-factor test established by the D.C. Circuit in the *Tax Analysts* litigation is not entirely clear."). In addition, the first factor, in attempting to define the term "control," relies on the word "control." *See Burka*, 87 F.3d at 515. The D.C. Circuit has also recognized that that in certain contexts, "the four-factor test is divorced from FOIA's key objective – revealing to the public how federal agencies operate." *Cause of Action*, 753 F.3d at 215.

The third test applied by the D.C. Circuit is a totality of the circumstances test. So far, this test has been limited to cases attempting to distinguish between personal records and agency records. *See Consumer Fed'n of Am. v. USDA*, 455 F.3d 283, 297 (D.C. Cir. 2006) ("[O]ur circuit has adopted a totality of the circumstances test to distinguish 'agency records' from personal records."); *Edelman*, 172 F. Supp. 3d at 150 (applying a totality of the circumstances test to assess whether notes by agency employees were agency records).

None of the D.C. Circuit's tests for control are binding on this Court. Nonetheless, those tests strongly indicate that the Hard Drives do not constitute agency records.

1. **Under either the *Tax Analysts* or the *Burka* four-factor formulations, the Hard Drives do not constitute agency records.**

   **The first factor: nothing about the intent of the document's creator indicates that the Hard Drives constitute agency records.**

The first factor examines whether the creator of requested document intended to retain or relinquish control of the document. *See Burka v. HHS*, 87 F.3d at 515. This factor is particularly ill-suited to establish agency records in this case where the electronically stored information on the Hard Drives consists of over 20 million documents, *see* SMF ¶¶ 9, 23, no doubt created by numerous non-governmental authors. Tracking down each individual author for each of those 20 million documents to ascertain their specific intent in creating each separate document would be unduly burdensome and unworkable.

Nonetheless, this factor tilts heavily against the Hard Drives being agency records. That is so because the documents entered the USAO's possession only as a result of the USAO's discovery requests. It is, therefore, unrealistic to suppose that the documents' creators anticipated at the time of the documents' creation that (a) the documents would enter the USAO's possession and (b) the USAO would have to produce the documents subject to FOIA. And without any evidence that a non-governmental author knew or intended that a document would be integrated into a federal agency's file systems, this factor indicates that the Hard Drives are not agency records.

   **The second factor: Defendant did not have complete discretion to use and dispose of the Hard Drives as it saw fit.**

To satisfy the second factor, an agency must have the ability to use and dispose the requested documents as it sees fit. *See Burka v. HHS*, 87 F.3d at 515. But the USAO had no such ability with respect to the Hard Drives, which were each externally labeled to indicate that

they were subject to the protective orders entered in the EDMC Litigation.  *See* SMF ¶ 4.  For

that reason, the USAO did not have unfettered discretion to use and dispose of the Hard Drives

as it saw fit.  *See, e.g., Wash. Post v. DOD*, 766 F. Supp. 1, 17 (D.D.C. 1991) (holding that a

hearing transcript transferred from Congress to an agency was not an agency record subject to

FOIA because the cover memorandum restricted the agency's use of the transcript), *aff'd on*

*other grounds*, 76 F.3d 1232 (D.C. Cir. 1996).  More acutely, at the time of plaintiff's FOIA

request, the Hard Drives were in a room at the USAO for return to counsel for EDMC to

discharge the USAO's obligations under the protective orders.  *See* SMF ¶ 21.

> **The third and fourth factors:  at the time of plaintiff's FOIA**
> **request, the USAO was not reading or relying on the Hard**
> **Drives, and the Hard Drives were not integrated into the**
> **USAO's file systems.**

The final two control factors focus on the agency's use of the requested information at

the time of the FOIA request.  The third factor examines the extent that the agency was reading

or relying on the requested documents.  *See Burka v. HHS*, 87 F.3d at 515.  The fourth factor

evaluates whether the requested documents were integrated into the agency's file system.  *See id.*

Both of those factors indicate that the Hard Drives are not "agency records."  The USAO

did not, at any time, access the electronically stored information directly from the Hard Drives.

*See* SMF ¶¶ 6, 8.  When the USAO received an individual Hard Drive, it sent that Hard Drive to

the McKool Smith law firm, and the electronically stored information on the Hard Drives was

uploading onto an electronic information review platform.  *See id.* ¶ 7.  Notably, due to the

procedural posture of the case and the timing of settlement negotiations, AUSAs did not have

access to that document review platform.  *See id.* ¶ 8; *see also Judicial Watch*, 646 F.3d at 928

("It goes without saying that an agency cannot integrate into its record system a document

created by a third party that none of its employees have read . . . ."); *Bazier v. U.S. Dep't of the*

*Air Force*, 887 F. Supp. 225, 228 (N.D. Cal. 1995) (explaining that material "maintained solely for reference purposes or as a research tool" does not constitute an agency record).

Significantly as well, the Supreme Court has emphasized that the control analysis is evaluated as of the date of the FOIA request, *see Tax Analysts*, 492 U.S. at 145, and with that focus, it is clear that neither the third nor the fourth factor can be satisfied here. Well before the date of plaintiff's FOIA request (June 20, 2016), the EDMC Litigation had settled, and the external electronic information review platforms onto which electronically stored information from the Hard Drives had been uploaded were taken offline. *See* SMF ¶ 20; *Judicial Watch*, 726 F.3d at 219 ("In deciding whether a document is an agency record under FOIA, we examine how the agency would treat the records in its normal course of operations, in the absence of pending FOIA-related litigation."). All that remained in June 2016 were the physical Hard Drives, which were not part of a file or a record system, but rather were placed in a room at the USAO for return to counsel for EDMC. *See* SMF ¶ 21. In that condition, the USAO did not have ready access to the contents of the Hard Drives. *See id.* ¶¶ 23-24; *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) (explaining that FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained."). On these facts, which demonstrate that the at the time of the FOIA request, the USAO was not reading or reviewing the documents nor had it placed them in any file or record system, the Hard Drives do not constitute agency records.

**3. CONSIDERATION OF ADDITIONAL FACTORS UNDER A TOTALITY OF THE CIRCUMSTANCES APPROACH FURTHER ESTABLISHES THAT THE HARD DRIVES DO NOT CONSTITUTE AGENCY RECORDS.**

Using a totality of the circumstances approach, three additional considerations indicate that the Hard Drives are not agency records.

First, because EDMC's documents on the Hard Drives would reveal virtually nothing about the activities, functioning, operations, or structure of any federal agency, subjecting the Hard Drives to FOIA would be inconsistent with the central purpose of FOIA, which is to inform the public of an agency's operations. As the D.C. Circuit explained:

> The public cannot learn anything about agency decisionmaking from a document the agency neither created nor consulted, and requiring disclosure under these circumstances would do nothing to further FOIA's purpose of "open[ing] agency action to the light of public scrutiny."

*Judicial Watch*, 646 F.3d at 927 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 353, 372 (1976); *see also Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 230 F. Supp. 3d 1245, 1251 (D. Colo. 2017). In this case, it is plain that the USAO did not create the Hard Drives. *See* SMF ¶ 2. Thus while the Hard Drives may reveal additional information about EDMC, they would not provide any additional insight into the activities, functioning, operations, or structure of government.

On this basis alone, this Court should do as other courts outside of the D.C. Circuit have done when the information sought by a FOIA requestor will shed no light on the operations of a federal agency: it should determine that the Hard Drives are not agency records not subject to FOIA. *See, e.g., SDC Dev. Corp. v. Mathews*, 542 F.2d 1116, 1120 (9th Cir. 1976) (Kennedy, J.) (holding that a complete reference library of medical writings and publications did not constitute agency record subject to FOIA because they did not "directly reflect the structure, operation, or decision-making functions of the agency"); *Gilmore v. U.S. Dep't of Energy*, 4 F. Supp. 2d 912, 921 (N.D. Cal. 1998) (holding that video conferencing software subject to a FOIA request "illuminates nothing about [the agency's] decisionmaking process and thus is not an agency record subject to disclosure under the FOIA").

Second, it is well-established that mere possession of a document does not convert a document belonging to another entity into an agency record. *See Goland v. CIA*, 607 F.2d 339,

345 (D.C. Cir. 1978) (rejecting the argument that "an agency's possession of a document Per se dictates that document's status as an 'agency record'"), *Tax Analysts*, 913 F. Supp. at 602 ("To hold that control is synonymous with possession contradicts the Supreme Court's ruling in *Kissinger* . . . ."). For instance, congressional records, presidential papers, court documents, and personal notes have all been found to belong other entities and not to federal agencies, and therefore those classes of documents are not agency records merely because a federal agency possesses them. *See, e.g., Kissinger*, 445 U.S. at 157 (holding that personal papers are not agency records); *Judicial Watch*, 726 F.3d at 224 (holding that presidential records are not agency records); *Katz v. NARA*, 68 F.3d 1438, 1442 (D.C. Cir. 1995) (holding that documents belonging to Kennedy estate was not papers were not agency records); *Goland v. CIA*, 607 F.2d 339, 348 (D.C. Cir. 1978) (holding that congressional records are not agency records); *Bureau of National Affairs, Inc. v. U.S. Dep't of Justice*, 742 F.2 1484, 1492 (D.C. Cir. 1984) (holding that appointment calendars "created for the personal convenience of individual officials" are not agency records); *Cook v. Willingham*, 400 F.2d 885, 885-86 (10th Cir. 1968) (holding that a judicial document – a presentence investigation report – is not an agency record). Likewise, here, the documents plaintiff seeks belong more appropriately to another entity – EDMC – and they are therefore most appropriately viewed as "EDMC records" and not "agency records."

Third, the USAO understood its possession of the Hard Drives to be temporary. *See* SMF ¶ 5. If such temporary possession were sufficient to create an agency record under FOIA, then FOIA would quickly become unworkable: a federal agency that received materials on loan from a library or research institute for its employees to read and rely upon, would, under a *Burka* formulation, convert those borrowed materials into "agency records" subject to FOIA. If anything, this practical consideration counsels for a bright-line rule that documents in the

temporary possession of a federal agency, especially those that must be returned to their source, cannot constitute agency records under FOIA.

### C. SUMMARY JUDGMENT SHOULD BE ENTERED FOR DEFENDANT BECAUSE PLAINTIFF'S FOIA REQUEST IS UNDULY BURDENSOME WITH RESPECT TO THE HARD DRIVES.

It is a deeply rooted principle that Courts will not enforce FOIA requests that are "so broad as to impose an unreasonable burden upon the agency." *Am. Fed'n of Gov't Employees ("AFGE"), Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990); *see also Halpern v. FBI*, 181 F.3d 279, 288 (2d Cir. 1999) ("[A]n agency need not conduct a search that plainly is unduly burdensome."); *Pub. Citizen, Inc. v. Dep't of Educ.*, 292 F. Supp. 3d 1, 6 (D.D.C. 2003) ("[A]n agency need not honor a FOIA request that requires it to conduct an unduly burdensome search."). For that reason, a federal agency need not comply with a FOIA request that "would require the agency to locate, review, redact, and arrange for inspection of a vast quantity of material." *AFGE*, 907 F.2d at 209.

Plaintiff's FOIA request seeking information produced by EDMC on the Hard Drives would involve the search, review, and redaction of a vast quantity of material. Specifically, plaintiff's request would require the search of approximately 20 million documents, estimated to consist of 145 million printed pages, comprising over nine terabytes of electronically stored information to ascertain which documents within that production would be potentially responsive to the specific discovery request identified in plaintiff's FOIA request. *See* SMF ¶¶ 9, 23. To undertake such a task would require the uploading of that contents of the Hard Drives to an electronic information review platform, and given the volume of the electronically stored information on the Hard Drives, the USAO does not have a platform that could host these documents. *See id.* ¶¶ 23-24. Beyond uploading, hosting, and searching the contents of the Hard Drives for responsive documents, responding to plaintiff's FOIA request would also require a

line-by-line review of each page of each responsive document for privileges and other FOIA exemptions. *See id.* ¶ 25. Any material subject to privilege or court order would then have to be redacted and annotated to identify the basis for the redaction (such as the privacy of personally identifiable information). *See id.*

To perform those tasks requires inordinate time and money from the agency. The Executive Office for the United States Attorneys has estimated that even if these tasks received full staffing by that office – to the exclusion of all other FOIA obligations – they would take 460 years to complete. *See* SMF ¶ 26. The monetary costs can be estimated as comparable to the costs for hosting the documents during the EDMC Litigation, which were $100,000 per month. *See id.* ¶ 23. For these reasons, uploading, hosting, processing, reviewing, and redacting approximately 20 million documents on the Hard Drives – a task that was not necessary to secure the $95.5 million settlement in the EDMC Litigation – would be unduly burdensome, and summary judgment should be entered for defendant on this basis.

For a comparative perspective, plaintiff's FOIA request is more burdensome than those at issue in an array of cases in which courts have found FOIA requests to be unduly burdensome. For instance, in *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247 (D.D.C. 2014), the court held that a FOIA request estimated to require 8,000 hours to make redactions to 20 million responsive records was unreasonably burdensome and therefore unenforceable. *See id.* at 275-77. Similarly, in *Nat'l Day Laborer Organizing Network v. U.S. Immigration & Customs Enforcement*, -- F. Supp. 3d --, 2017 WL 1494513 (S.D.N.Y. Apr. 19, 2017), the court held that searching and reviewing between 436,000 and 1.3 million pages of potentially responsive records, estimated to take between 436 and 1,300 weeks was unduly burdensome. *See id.* at *15. Likewise, in *Long v. Immigration and Customs Enforcement*, 149 F. Supp. 3d 39 (D.D.C. 2015),

the court held that searching, reviewing, and redacting over five terabytes of electronically stored information was unduly burdensome. *See id.* at 56-58. And the burden imposed by plaintiff's FOIA request here dwarfs the burden found to be undue in *Hainey v. U.S. Dep't of the Interior*, 925 F. Supp. 2d 34 (D.D.C. 2013), in which the court held that a search and review of every single email sent or received by 25 employees over a two-year period was unduly burdensome. *See id.* at 45. Other cases also make clear that far less is required for an undue burden showing than is at issue here. *See, e.g., Nation Magazine, Wash. Bureau v. U.S. Customs Serv.,* 71 F.3d 885, 891-92 (D.C. Cir. 1995) (finding unreasonable a request to search "23 years of unindexed files for records pertaining to [one individual] . . . would impose an unreasonable burden on the agency"); *Am. Fed'n of Gov't Employees, Local 2782 v. U. S. Dep't of Commerce,* 907 F.2d 203, 208-09 (D.C. Cir. 1990) (finding unreasonable a request to locate "every chronological office file and correspondent file, internal and external, for every branch office [and] staff office . . . ."); *Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. U.S. Dep't of Homeland Sec.*, 8 Supp. 3d 188, 202-204 (D. Conn. 2014) (finding that a request to review and redact personally identifying information from 26,000 documents was unduly burdensome); *Int'l Counsel Bureau v. U.S. Dep't of Def.*, 723 F. Supp. 2d 54, 59 (D.D.C. 2010) (holding that a FOIA request that would require a full-time staff of twelve one year to review would impose undue burden). Put simply, plaintiff's FOIA request involves more documents, more pages, more terabytes, and more time than any of these cases in which courts have found FOIA requests to be unduly burdensome. Defendant is entitled to summary judgment.

## II. DEFENDANT CONDUCTED AN ADEQUATE SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S FOIA REQUEST.

In response to a FOIA request, an agency must conduct a search that is reasonably calculated to locate all responsive records. *See Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344,

1351 (D.C. Cir. 1983); *Campbell v. Soc. Sec. Admin.*, 446 Fed. Appx. 477 (3d Cir. June 3, 2011); *Cozen O'Connor v. U.S. Dep't of Treasury*, 570 F. Supp. 2d 749, 766 (E.D. Pa. 2008); *cf. Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("There is no requirement that an agency search every record system."). To prove such an adequate search, an agency must provide sworn statements describing in reasonable detail the scope and method of the agency's search for potentially responsive records. *See generally Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) ("[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA."). Those sworn statements are entitled to a presumption of good faith. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Consistent with these standards, the USAO conducted searches designed to locate all agency records that were responsive to plaintiff's FOIA request. The USAO determined that the only United States Attorney's Office that could reasonably be expected to have responsive records was the USAO in the Western District of Pennsylvania. *See* SMF ¶ 27. That is so because the EDMC Litigation arose in the Western District of Pennsylvania and was handled by AUSAs in that office, and not by any other United States Attorney's Office. *See id.* ¶ 28. In addition, the USAO did not share or transmit documents and electronically stored information received from EDMC in discovery to any other United States Attorney's Office. *See id.*

Within the USAO, only the Civil Division could reasonably be expected to possess records responsive to the Project's FOIA request. *See id.* ¶ 29. The EDMC Litigation was staffed by AUSAs in the Civil Division, and EDMC produced materials responsive to the United States' discovery requests to the Deputy Chief of the Civil Division, Christy C. Wiegand, who served as lead trial counsel in the EDMC Litigation. *See id.* ¶ 29. The Civil Division did not

provide any of the electronically stored information produced by EDMC in response to the United States' discovery requests to any other component of the USAO. *See id.*

Within the Civil Division, only three individuals could reasonably be expected to possess records potentially responsive to the Project's FOIA request: (i) Deputy Chief Christy C. Wiegand, lead trial counsel in the EDMC Litigation; (ii) Assistant U.S. Attorney Colin J. Callahan, co-counsel in the EDMC Litigation; and (iii) Michael A. Comber, Civil Chief and settlement counsel in the EDMC Litigation. *See id.* ¶ 30. No other individuals – attorneys, paralegals, or support staff – within the Civil Division could reasonably be expected to possess records potentially responsive to plaintiff's FOIA request. *See id.* As for the three attorneys who may have potentially responsive records they determined that such records could reasonably be expected in only three locations within the Civil Division's files: (i) the hard copy case file for the EDMC Litigation; (ii) the electronic case file for the EDMC Litigation; and (iii) email archives for the three attorneys with involvement in the EDMC Litigation. *See id.* ¶ 31. The USAO searched each of those files to locate records potentially responsive to the Project's FOIA request as set forth below.

As far as the hard copy of the EDMC Litigation case file, Deputy Chief Wiegand and AUSA Callahan searched it manually, file-by-file, and in some instances document-by-document, for materials that EDMC produced in discovery to the United States. *See* SMF ¶ 32. That search yielded six documents, which were printed by counsel and which contain handwritten attorney notes. *See id.* As the mental impressions of counsel, those documents would be subject to the work product doctrine, *see generally Hickman v. Taylor*, 329 U.S. 495 (1947). Because those documents were not received directly from EDMC in response to the specific discovery requests, and were instead separate and derivative documents from the

materials received from EDMC, they are non-responsive to plaintiff's FOIA request, and they have not been logged on the *Vaughn* Index.

The USAO also conducted an adequate search of the primary electronic case file for the EDMC Litigation, which is maintained in Deputy Chief Wiegand's network directory space. Deputy Chief Wiegand conducted a file-by-file search of the electronic case file, spanning all electronic folders and sub-folders. *See* SMF ¶ 33. The search of Deputy Chief Wiegand's network directory space yielded documents potentially responsive to plaintiff's FOIA request, totaling under 3500 pages, which were produced directly from EDMC on a CD, and uploaded onto Deputy Chief Wiegand's electronic file space. *See id.* ¶¶ 10, 34. Those documents have been logged and identified as entries 1 through 90 on the Vaughn Index. For completeness, AUSA Callahan and Civil Chief Comber conducted similar searches of their network directory space for any materials relating to the EDMC Litigation that might be potentially responsive to the Project's FOIA request, and they found no documents responsive to plaintiff's FOIA request. *See id.* ¶ 35.

The USAO also conducted searches of the electronic mail archives of Deputy Chief Wiegand, AUSA Callahan, and Civil Chief Comber using three criteria: attachments, domains, and time frame. *See* SMF ¶ 36. First, because plaintiff's FOIA request sought materials produced in discovery, only emails containing attachments could reasonably be expected to contain potentially responsive records. *See id.* ¶ 37. Accordingly, the search of the USAO-WDPA's email archiving platforms was limited to emails containing attachments. *See id.* Second, because plaintiff's FOIA request sought materials that EDMC *produced to* the United States in discovery in the EDMC Litigation, only emails to or from the USAO between either EDMC's outside counsel (Jones Day), Relators' Counsel (McKool Smith law firm and Harry

Litman), or the Special Master (and/or his law clerk) who was adjudicating various issues could reasonably be expected to contain potentially responsive records. *See id.* ¶ 38. Accordingly, the search of the USAO-WDPA's email archiving platforms extended to emails to/from/copying the JonesDay.com and McKoolSmith.com domains, as well as the email addresses for Harry Litman, the Special Master and the Special Master's law clerk. *See id.* Third, although the Civil Division received EDMC's first production of documents on October 15, 2013, via hand delivery of external media, the Civil Division determined from a review of the case file that potentially responsive materials to the Project's FOIA request would not have been transmitted via email before May 2, 2014. *See id.* ¶ 39. Similarly, the Civil Division determined from a review of the case file that potentially responsive materials to the Project's FOIA request would not have been transmitted via email after the November 16, 2015, execution of the settlement agreement. *See id.* Accordingly, the search of the USAO-WDPA's email archiving platforms included the time period of May 2, 2014, through November 16, 2015. *See id.* This search of the USAO's email archiving platforms yielded five documents originally produced by EDMC. *See id.* ¶ 40. Those documents were emailed among counsel in furtherance of the litigation would likely be shielded from disclosure by privilege, but because they were not directly produced from EDMC to the USAO in response to the specific discovery requests, these documents are non-responsive and have not been logged. *See id.*

 For these reasons, the USAO conducted a search that was reasonably calculated to locate all agency records responsive to plaintiff's request.

**III. DEFENDANT IS JUSTIFIED IN NOT DISCLOSING THE RECORDS CATALOGUED ON THE *VAUGHN* INDEX.**

 Through its nine exemptions that permit the withholding of responsive records, *see* 5 U.S.C. § 552(b)(1)-(9), FOIA recognizes that the release of certain information "may harm

legitimate governmental or private interests." *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080

(D.C. Cir. 1998). When an agency makes a withholding pursuant to a FOIA exemption, the

agency must explain the exemption(s) claimed and the applicability of the exemption(s). *See*

*Reporters Comm.*, 489 U.S. at 753; *Sheet Metal Workers Int'l Ass'n. v. U.S. Dep't of Veterans*

*Affairs*, 135 F.3d 891, 897 (3d Cir. 1998); *McDonnell v. United States*, 4 F.3d 1227, 1241 (3d

Cir. 1993). An agency makes these showings through supporting materials, often referred to as

*Vaughn* indices or *Vaughn* declarations, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *see*

*also Ubungen v. U.S. Citizenship & Immigration Servs.*, 600 F. Supp. 2d 9, 11 (D.D.C. 2009).

The *Vaughn* Index and accompanying sworn statement "must provide reasonably specific

information that explains how the exemption applies." *Cozen O'Connor v. U.S. Dep't of*

*Treasury*, 570 F. Supp. 2d 749, 765 (E.D. Pa. 2008); *see also McDonnell*, 4 F.3d at 1241; *Am.*

*Friends Serv. Comm. v. Dep't of Defense*, 831 F.2d 441, 444 (3d Cir. 1987). An agency's

*Vaughn* declarations are entitled to a presumption of good faith. *See SafeCard Servs.*, 926 F.2d

at 1200; *Lee v. U.S. Dep't of Justice*, 235 F.R.D 274, 287 (W.D. Pa. 2006). Ultimately, if an

agency's justifications for invoking a FOIA exemption are "logical" or "plausible," then the

agency is entitled to summary judgment. *See Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir.

2007); *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984).

A. **IT WAS PROPER TO WITHHOLD PERSONALLY IDENTIFIABLE INFORMATION ABOUT EDMC APPLICANTS AND STUDENTS UNDER EXEMPTION 6.**

Exemption 6 provides general privacy protection for personal information contained in

"personnel, medical, or other similar files." 5 U.S.C. § 552(b)(6). This privacy exemption

applies when the invasion of privacy would be "clearly unwarranted." *id.*; *see also U.S. Dep't of*

*State v. Ray*, 502 U.S. 164, 172 (1991). Although the Third Circuit has not provided much

guidance on this exemption, courts balance the privacy interest at stake against the public interest

23

in disclosure.  *See Pub. Citizen Health Res. Group v. U.S. Dep't of Labor*, 591 F.2d 808, 809 (D.C. Cir. 1978).

That balance weighs heavily in favor of preserving the privacy of the personally identifiable information of EDMC's applicants and students.  Each and every assertion of Exemption 6 logged on the *Vaughn* Index serves the same purpose: to protect personally identifiable information of EDMC students and applicants.  As a general matter, the public's interest in the personally identifiable information of any given student is "virtually non-existent." *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005).  By contrast, students have a substantial interest in protecting the privacy of their personally identifiable information from public disclosure.  Accordingly, the USAO is justified in asserting Exemption 6 to preserve the privacy of the students' personally identifiable information.

### B. DEFENDANT WAS OBLIGATED TO WITHHOLD RECORDS THAT WERE DESIGNATED AS SUBJECT TO A PROTECTIVE ORDER OR PLACED UNDER SEAL.

An agency has no discretion to release any record covered by an injunction, protective order, or court seal prohibiting disclosure, nor is it under any obligation under the Freedom of Information Act to do so.  *See GTE Sylvania, Inc. v Consumers Union*, 445 U.S. 375, 386-87 (1980).  As detailed on the *Vaughn* Index, the documents that the USAO received from EDMC and incorporated into its files are either subject to one of the protective orders entered into in the EDMC Litigation or subject to an under seal designation.  FOIA does not permit an agency breach the terms of a protective order or to ignore an under seal designation, and for that reason those documents are each withheld in full due to the operation of those court orders.

### C. NO INFORMATION MAY BE RELEASED UNDER THE REASONABLY SEGREGABLE REQUIREMENT.

Where an agency has legitimately withheld information, it must still release all reasonably segregable material. *See* 5 U.S.C. § 552(b). Under a reasonable segregability analysis, no further information may be produced here. That is so because the documents on the *Vaughn* Index have been either been designated as subject to protective order or they are under seal. Thus, although a partial or full release of the documents on the *Vaughn* Index would be possible based solely on Exemption 6, the court orders prevent the release of any portion of those documents.

## CONCLUSION

For the foregoing reasons, summary judgment should be entered in favor of defendant.

November 17, 2017                              Respectfully Submitted,

SOO C. SONG                                    CHAD A. READLER
Acting United States Attorney                  Principal Deputy Attorney General
Western District of Pennsylvania               Civil Division

                                               ELIZABETH J. SHAPIRO
 /s/ *Christy Criswell Wiegand*                Deputy Branch Director
CHRISTY CRISWELL WIEGAND                        Federal Programs Branch
Assistant United States Attorney
Western District of Pennsylvania
Joseph F. Weis Jr. U.S. Courthouse              /s/ *Peter J. Phipps*
700 Grant St., Suite 4000                      PETER J. PHIPPS
Pittsburgh, PA 15219                            Senior Trial Counsel
(412) 894-7452                                 U.S. Department of Justice, Civil Division
Email: christy.wiegand@usdoj.gov               Federal Programs Branch
                                               950 Pennsylvania Ave., NW
                                               Washington, DC 20530
                                               Tel: (202) 616-8482 / (412) 894-7421
                                               Email: peter.phipps@usdoj.gov

                                               *Counsel for Defendant*