**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PROJECT ON PREDATORY LENDING OF THE LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 17-210** **Judge Nora Barry Fischer** |
| **UNITED STATES DEPARTMENT OF JUSTICE** | ) ) ) ) | |
| **Defendant.** | | |

<u>**Memorandum Opinion**</u>

**I.  Introduction**

This action is brought by the Project on Predatory Lending of the Legal Services Center of Harvard Law School ("the Project") against the United States Department of Justice ("the DOJ"), seeking disclosure of materials pursuant to the Freedom of Information Act, 5 U.S.C. § 552, obtained by the DOJ during discovery in a prior lawsuit.  The DOJ has withheld all materials requested by the Project and thus the parties have filed cross-motions for summary judgment to resolve the dispute.  (Docket Nos. 41 & 47).  In addition, pending before the Court are the Project's related Motion to Strike Statements from the Affidavits submitted by the DOJ in support if its cross-motion for summary judgment (Docket No. 54), and a Motion in the Alternative for Discovery (Docket No. 52).  After careful consideration of the parties' positions, and for the following reasons, the Court will grant in part and deny in part each parties' cross-motion for summary judgment.  The DOJ will be ordered to produce a limited set of responsive documents deemed to be agency records.  The Project's motion for discovery will be denied as moot and its motion to strike will be denied to the extent that the Court's opinion is consistent with the statements in the DOJ's affidavits.

## II.  Background

The underlying litigation in which the requested FOIA materials were produced was a *qui tam* False Claims Act action filed in the United States District Court for the Western District of Pennsylvania on April 7, 2007, against Education Management Corporation ("EDMC").  *United States ex. rel. Washington v. Education Management LLC*, No. 2:07-cv-461 (W.D. Pa.) ("EDMC Litigation").  Pl.'s Concise Stmt. Mat. Facts, ¶ 1 (Docket No. 49); Def.'s Concise Stmt. Mat. Facts, ¶ 1 (Docket No. 43).  In the EDMC Litigation, whistleblower employees of EDMC, referred to as the Relators, alleged that EDMC violated federal law by illegally paying recruiters based on the number of students they could enroll and then lying to the government in order to receive approximately $11 billion dollars in federal funding.  Pl.'s Concise Stmt. Mat. Facts, ¶ 2.

The United States, as well as several other States, intervened in the lawsuit.  *Id.* ¶ 2.  The EDMC Litigation was handled within the Civil Division of United States Attorney's Office of the Western District by lead counsel Christy C. Weigand, Deputy Chief of the Civil Division, along with co-counsel, Assistant United States Attorney Colin J. Callahan.  Def.'s Concise Stmt. Mat. Facts, ¶¶ 1, 28, 30.  The Chief of the Civil Division, Michael A. Comber, oversaw the litigation and was settlement counsel.  *Id.* ¶ 30.  Attorneys from the McKool Smith law firm represented the Relators, and attorneys from the Jones Day law firm represented EDMC.  *Id.* ¶ 38.  On November 16, 2015, the DOJ announced that it had settled the EDMC litigation for $95.5 million dollars.  Pl.'s Concise Stmt. Mat. Facts, ¶ 7; Def.'s Concise Stmt. Mat. Facts, ¶ 17.

### A.  Relevant Discovery during the EDMC Litigation

During the course of discovery in the EDMC Litigation, EDMC was ordered to produce documents regarding student recruitment practices and practices regarding regulatory

2

compliance.  Pl.'s Concise Stmt. Mat. Facts, ¶ 1; Def.'s Concise Stmt. Mat. Facts, ¶ 6.  From October 15, 2013 through September 15, 2014, EDMC produced a voluminous amount of discovery materials to the DOJ.  Def.'s Concise Stmt. Mat. Facts, ¶¶ 2, 39.  The discovery materials were produced on external electronic media consisting of hard drives, with some information provided on Compact Discs and Digital Video Discs (collectively referred to as the "EDMC Hard Drive materials" or "Hard Drives").  *Id.* ¶ 2.  The EDMC Hard Drive materials were delivered to the DOJ on a rolling basis.  *Id.*  Upon receipt by the DOJ of a Hard Drive, the DOJ immediately delivered them to counsel for the Relators at McKool Smith.  *Id.* ¶ 7.  Relators' counsel would upload the materials on the Hard Drives to the firms' electronic document review platform.  *Id.*  McKool Smith eventually returned the Hard Drives to the DOJ, where the Hard Drives themselves were stored.  *Id.* ¶ 20.

EDMC also produced a single Compact Disc to the DOJ containing approximately 3600 pages of material from an EDMC subsidiary, the Art Institute of Dallas (the "AI Dallas CD"). *Id.* ¶ 10.  The AI Dallas CD was produced on short notice due to potential spoliation concerns. *Id.* ¶ 10.  The AI Dallas CD materials were uploaded into an electronic file folder within the electronic case file on Deputy Chief Christy C. Weigand's network directory.  *Id.* ¶ 16.

**B.  EDMC Protective Orders**

Both the EDMC Hard Drive materials and the AI Dallas CD were identified by EDMC as being subject to one or both of two protective orders addressing protection of documents containing confidential and private information entered by the EDMC District Court.  *Id.* ¶ 4.  A Confidentiality Protective Order and an Order under the Family Educational Rights and Privacy Act.  Pl.'s Concise Stmt. Mat. Facts, ¶¶ 8, 10; Def.'s Concise Stmt. Mat. Facts, ¶ 4.

1.  **Confidentiality Protective Order**

The EDMC Court entered a "Protective Order Governing Confidential Material" on April 12, 2013, which was amended on September 16, 2016 (collectively the "Confidentiality Protective Order"). EDMC Litigation, Protective Order Governing Confidential Material Apr. 12, 2013, Docket No. 257; First Amended Protective Order Governing Confidential Material, Sept. 16, 2016, Docket No. 453. "Confidential Material" in the Order is defined as "information protected by federal or state statute or regulation, personal identification information (e.g., social security number, date of birth), personnel information (e.g., employee employment records and compensation), financial, proprietary, and trade secret information that is produced by any party or third party and denominated by the producing party, in good faith, as 'Confidential.'" *Id.* ¶ 1. Pursuant to the Confidentiality Protective Order, a party's designation of information in a document as "confidential" does not constitute "a finding that information designated 'Confidential' actually constitutes information that may be so designated." *Id.* ¶ 3. The Order further provides that the "designating party shall have the burden of demonstrating that good cause exist for its designation" of confidentiality. *Id.* The Confidentiality Protective Order provides for the return or destruction of Confidential Material within 60 days after resolution of the action. *Id.* ¶ 13.

The Confidentiality Protective Order also includes a separate paragraph entitled "Disclosures to Third Parties," which provides a mechanism for disclosure of materials designated as Confidential Material, "[i]n the event of a request by a third party." *Id.* ¶ 7. The Order requires that the party who receives a third party request for disclosure must provide notice to the party who designated the material as confidential. *Id.* The designating party then is

given the opportunity to file a protective order within ten days of notice to contest the production

of the confidential material to the third party.  *Id.*  If no such protective order is filed, the party

who received the third party request for disclosure may produce the requested material.  *Id.*

### 2.  FERPA Protective Order

The second protective order entered by the EDMC Court addressed concerns under the

Family Educational Rights and Privacy Act ("FERPA Protective Order").  EDMC Litigation,

Protective Order Governing Personally Identifiable Information from Education Records That

May Be Subject to The Family Educational Rights and Privacy Act, Apr. 8, 2013, Docket No.

255.  The FERPA Protective Order is specifically aimed at protecting "FERPA Confidential

Material," which the Order explains is "personally identifiable information from education

records subject to" FERPA.  FERPA Protective Order, at 1 (preamble).  According to the Order,

"FERPA Confidential Material" is not to be disclosed to unauthorized individuals.  *Id.* ¶ 5.  Like

the Confidentiality Protective Order, the FERPA Protective Order also provides that a party's

designation of information in a document as FERPA Confidential does not constitute "a finding

that information designated "FERPA Confidential" actually constitutes personally identifiable

information from students' education records."  *Id.* ¶ 8.

In addition, when FERPA Confidential Material is contained within a document that will

be disclosed during litigation, the parties are to redact the FERPA Confidential Material.  *Id.* ¶ 7.

The FERPA Protective Order also provides that when FERPA Confidential Material is to be

submitted to the Court or filed on the docket "the document or filing, or portions thereof

containing FERPA Confidential Material [must be] placed under seal."  *Id.* ¶ 9.  The FERPA

Protective Order includes additional, partially redundant, protections for the filing or use of any

document in court proceedings that contain FERPA Confidential Material.  *Id.* ¶ 11.  Paragraph 11 provides that "[i]n order to protect FERPA Confidential Material to be used in any Court filings or proceedings," the party filing or using such material shall protect the confidential information by

> (i) redacting confidential documents to remove personally identifiable information about students and their families, (ii) coding the documents to substitute a numerical or other designation for the student's name or other identifiable information about the student or his/her family, or (iii) introducing summary evidence where practicable which may be more easily redacted.

*Id.*

### C.  The Project's FOIA Request

By letter dated June 20, 2016, the Project initiated a FOIA request to the Department of Justice seeking EDMC records produced in response to twenty-one specific requests for production, one interrogatory, and any EDMC records produced regarding admissions employee emails as ordered by the Special Master.  Letter from A. Savage to S. Gerson, June 20, 2016, Docket No. 17-2.  The DOJ denied the FOIA request stating, in part, that in making its determination to deny the request the DOJ took into account "the protective orders in place, protection of personal privacy, protection of confidential business information, and the Family Educational Rights and Privacy Act."  Letter from T. Anderson to A. Savage, Sept. 6, 2016, Docket No. 17-3.

The Project moved to intervene in the EDMC litigation and filed a motion seeking an order clarifying the DOJ's reliance on the protective orders.  EDMC Litigation, Docket Nos. 456, 458.  In part, the Project requested that the Court require the DOJ to comply with the provisions of the Confidentiality Protective Order regarding requests for disclosure of documents by third

parties.  EDMC Litigation, Docket No. 484, at 6-8.  The Project also timely appealed the DOJ's

denial of its FOIA request, and when the time period for responding to the appeal had passed

without a response from the DOJ, the Project filed the instant lawsuit.  The DOJ argues that it

has properly withheld the records, while the Project argues that the DOJ has no legitimate basis

for withholding the records and requests that the Court order the DOJ to search for and produce

all non-exempt records.

### III.  Standard of Review

"The Freedom of Information Act (FOIA), 5 U.S.C. § 552, requires federal agencies to make

Government records available to the public, subject to nine exemptions for specific categories of

material." *Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011).  "The FOIA confers jurisdiction

on the district courts 'to enjoin the agency from withholding agency records and to order the

production of any agency records improperly withheld.'" *U.S. Dep't of Justice v. Tax Analysts*,

492 U.S. 136, 142 (1989) (quoting § 552(a)(4)(B)).  Thus, a federal court has jurisdiction to

compel an agency to produce requested records where it is shown "that an agency has (1)

"improperly" (2) "withheld" (3) "agency records."'" *Tax Analysts*, 492 U.S. at 142 (quoting

*Kissinger v. Reporters Committee for Freedom of Press*, 445 U.S. 136, 150 (1980)); *Judicial*

*Watch, Inc. v. U.S. Dep't of Justice*, 813 F.3d 380, 383 (D.C. Cir. 2016).  "The burden is on the

agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency

records' or have not been 'improperly' 'withheld.'" *Tax Analysts*, 492 U.S. at 142 n.3.  The

district court "conducts a de novo review of the agency's decision to withhold records from the

public and determines as a matter of law if the agency has complied with the statute." *Pohl v.*

*U.S. E.P.A.*, No. CIV.A. 09-1480, 2010 WL 4537048, at *2 (W.D. Pa. Nov. 2, 2010) (citing 5 U.S.C. § 552(a)(4)(B)).

"In general FOIA cases are resolved on summary judgment." *World Pub. Co. v. U.S. Dept. of Justice*, 672 F.3d 825, 832 (10th Cir. 2012); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 271 F. Supp. 3d 264 (D.D.C. 2017) (Summary judgment is the preferred mechanism for resolving FOIA cases), *aff'd sub nom. Judicial Watch, Inc. v. United States Dep't of Justice*, 719 F. App'x 21 (D.C. Cir. 2018); *Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, 973 F. Supp. 2d 306, 313 (S.D.N.Y. 2013). Summary judgment is appropriate where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV.  Discussion

The parties' cross-motions for summary judgment address the withholding of the EDMC Hard Drive materials; the adequacy of the DOJ's search for responsive records; the withholding of the materials found during the search; and whether the EDMC protective orders prohibit disclosure of responsive records. The Court will first consider whether the records contained in the Hard Drives are "agency records" under the FOIA, because if they are not "agency records" the Court does not have jurisdiction to compel the DOJ to produce the records. The Court will then address whether production of the documents on the Hard Drives is unduly burdensome even if the Hard Drive materials are deemed to be agency records. Next, the Court discusses the

adequacy of the DOJ's search for records, and whether the DOJ has properly withheld the hard copy and email archive documents uncovered by that search.  Finally, the Court addresses whether the EDMC protective orders prohibit the DOJ from disclosing any responsive records, specifically, the AI Dallas CD materials.

### A.  The EDMC Hard Drive Materials

The DOJ argues that it has several legitimate bases for not turning over the requested EDMC Hard Drive materials to the Project.  First, the DOJ argues that EDMC Hard Drive materials are not "agency records" subject to the FOIA.  Second, if the Hard Drive materials are determined to be agency records the DOJ argues that it has properly withheld them because to comply with the Projects' FOIA request would be unduly burdensome.  Finally, the DOJ argues that withholding of the EDMC Hard Drive materials is proper as they are subject to the protective orders, which is addressed separately below.

### 1.  "Agency Records"

The United States Supreme Court noted that Congress "did not provide any definition of 'agency records' in [the] Act."  *Forsham v. Harris*, 445 U.S. 169, 178 (1980).  The FOIA refers to "records" an "agency" shall make available upon proper request.  5 U.S.C.§ 552(a)(3) (an "agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person").  The actual term, "agency records," appears only in subsection (a)(4)(B), which provides that a requesting party may file suit in the district court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld."  5 U.S.C. § 552(a)(4)(B).

9

The Supreme Court has set forth two requirements to determine if requested materials constitute "agency records." *Tax Analysts*, 492 U.S. at 144.  "First, an agency must 'either create or obtain' the requested materials 'as a prerequisite to its becoming an 'agency record' within the meaning of the FOIA." *Id.*  (quoting *Kissinger*, 445 U.S. at 182).  "Second, the agency must be in control of the requested materials at the time the FOIA request is made." *Tax Analysts*, 492 U.S. at 145.  In *Tax Analysts*, the Supreme Court's sole elaboration on the control requirement was to explain that "[b]y control we mean that the materials have come into the agency's possession in the legitimate conduct of its official duties." *Id.*

The DOJ acknowledges that it "obtained" the Hard Drive materials from EDMC, and so the issue is whether the DOJ had "control" of the materials at the time of the Project's FOIA request. The DOJ argues that "control" in this case is lacking by reference to three non-precedential tests for determining agency control articulated and employed by the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") and other courts.  The D.C. Circuit Court in the *Tax Analysts* opinion upheld by the Supreme Court used a four-factor test to determine if an agency had control of the FOIA-requested materials:

> [1] the intent of the document's creator to retain or relinquish control over the records; [2] the ability of the agency to use and dispose of the record as it sees fit; [3] the extent to which agency personnel have read or relied upon the document; and [4] the degree to which the document was integrated into the agency's record system or files.

*Tax Analysts v. DOJ*, 845 F.2d 1060, 1069 (D.C. Cir. 1988) (citation omitted).  On appeal the Supreme Court "declined either to embrace or reject the four-factor test" used by the D.C. Circuit Court in *Tax Analysts*. *Edelman v. Sec. & Exch. Comm'n*, 172 F. Supp. 3d 133, 149 (D.D.C. 2016).  As a result, there is not a uniform standard for determining agency control of

10

materials applied by the courts.  As described below, some courts adhere to a strict four-factor test requiring all factors to be met, others balance and weigh the four-factors, and others use a totality of the circumstances approach.

The *Tax Analysts* test requires that all four factors favor agency control over the materials in order to qualify as agency records.  However, the D.C. Circuit in *Burka v. HHS*, 87 F.3d 508, 515 (D.C. Cir. 1996), referred to the same four factors but did not require all four factors to weigh in favor of agency control.  Finally, in *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283 (D.C. Cir. 2006), the Court stated:

> our circuit has adopted a totality of the circumstances test to distinguish "agency records" from personal records. The test "focus[es] on a variety of factors surrounding the creation, possession, control, and use of the document by an agency."

*Id.* at 287 (quoting *Bureau of Nat'l Affairs, Inc. v. U.S. Dep't of Justice,* 742 F.2d 1484, 1490 (D.C. Cir. 1984)).

As case law developed, various courts commented on how the four-factor test had been used.  One court stated that the D.C. Circuit's "past application of the test reveals its considerable indeterminacy" because in some cases the Circuit did not deem materials to be agency records "if fewer than all four factors pointed in that direction," while in others it found materials to be agency records "even though fewer than four factors indicated as much."

*Judicial Watch, Inc. v. U.S. Secret Service*, 726 F.3d 208, 220 (D.C. Cir. 2013).  The *Judicial Watch* Court elaborated on the indeterminacy of the test noting that:

> descriptions of the four-factor test do not make clear what to do when the factors point in different directions, with different intensities. Nor do our descriptions make clear whether the factors should receive equal weight.

*Id.*  In 2014, a D.C. Circuit panel noted the Circuit's history of questioning the helpfulness of the

11

four-factor test. *Cause of Action v. Nat'l Archives & Records Admin.*, 753 F.3d 210, 214-15 (D.C. Cir. 2014).  Specifically, the *Cause of Action* Court explained that in the case before it "applying the test . . . is particularly problematic" because the case did "not present the sort of questions the [four-factor] test purports to answer." *Id.*  Given the lack of commitment to a standard test within the D.C. Circuit it is not a surprise that courts in that Circuit have "also subsequently described the test as a 'totality of the circumstances test.'"  *Judicial Watch*, 726 F.3d at 220 (quoting *Consumer Fed'n of Am.,* 455 F.3d at 287).

A review of the case law on the issue of agency "control" of records provides sufficient guidance for the Court to determine whether an agency has "control" over the requested materials without the necessity to adhere to an indeterminately applied four-factor test. "'[C]ontrol' for FOIA purposes has no precise definition and may well change as relevant factors assume varying importance from case to case." *Crooker v. United States Parole Comm'n*, 730 F.2d 1, 5 (1st Cir. 1984).  Accordingly, in all but obvious cases, a totality of the circumstances analysis will be employed.  As explained below, in this case the relevant factor is the use of the materials.

Initially, the DOJ does not dispute that the EDMC Hard Drive materials were obtained in the legitimate conduct of its official duties.  *See Tax Analysts*, 492 U.S. at 145.  The materials were obtained by the DOJ in response to discovery requests to an opposing party during the course of DOJ litigation.  The DOJ was performing a quintessential official duty at the time it came into possession of the materials.  The Project argues that the fact that the DOJ was in control of the materials at the time of the FOIA request and obtained the materials in the legitimate conduct of its official duties the EDMC Hard Drive materials are "agency records."

The Court disagrees that this ends the analysis. The case law convincingly demonstrates that a court cannot conclude that "control" exists merely because an agency obtained the materials in the legitimate conduct of its official duties.

In a 2011 D.C. Circuit case, the FOIA- requester, Judicial Watch, sought documents created by Freddie Mac or Fannie Mae concerning political campaign contributions that were turned over to the Federal Housing Finance Agency ("FHFA") when these two companies went into conservatorship. *Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 926 (D.C. Cir. 2011). The Court found that at the time of transfer of the documents the creators of the documents, Freddie Mac and Fannie Mae, "intentionally relinquished control over the records when they agreed to the conservatorship." *Id.* at 927. The FHFA did not dispute that it possessed and controlled the documents but instead argued that it had not read or used the documents in any way and therefore they could not be agency records. *Id.* The Court agreed holding that "where an agency has neither created nor referenced a document in the 'conduct of its official duties,' the agency has not exercised the degree of control required to subject the document to disclosure under FOIA." *Judicial Watch*, 646 F.3d at 928 (quoting *Tax Analysts, 492 U.S. at 145*). The *Judicial Watch* Court concluded:

> Although we appreciate Judicial Watch's interest in how much money Fannie and Freddie gave to which politicians in the years leading up to our current financial crisis, satisfying curiosity about the internal decisions of private companies is not the aim of FOIA, and there is no question that disclosure of the requested records would reveal nothing about decisionmaking at the FHFA. We therefore hold that where an agency has neither created nor referenced a document in the "conduct of its official duties," *Tax Analysts, 492 U.S. at 145, 109 S.Ct. 2841,* the agency has not exercised the degree of control required to subject the document to disclosure under FOIA.

*Id.* at 928.

In a case considering whether Supreme Court opinions housed in a database by the Department of the Air Force were agency records, the Court found that the court opinions were not agency records. *Baizer v. U.S. Dep't of Air Force*, 887 F. Supp. 225 (N.D. Cal. 1995). The *Baizer* case followed the Supreme Court's *Tax Analysts* opinion in which the Court concluded, apparently in opposition to *Baizer*, that court opinions and orders in the possession of the Tax Division of the DOJ *were* agency records. However, the *Baizer* Court distinguished its conclusion from *Tax Analysts*, in part, by explaining that the court opinions held by the Air Force were "for reference purposes only" and described the opinions as "library reference materials." *Baizer*, 887 F. Supp. at 227, 229. In contrast, in *Tax Analysts*, the Tax Division of the DOJ acting as a party litigant in tax cases "uses the [court] decisions to determine whether to appeal or to file post-trial motions when the government loses and to collect money judgments when the government prevails." *Id.* at 228 (citing *Tax Analysts*, 492 U.S. at 138-39.) Thus, the different outcomes in these two cases is due to the use of the materials by the respective agencies.

The *Baizer* Court also relied on a Ninth Circuit Court opinion finding that "a complete reference library of medical writings and publications, accumulated and stored in a computer data bank by an agency of the federal government" was not agency records under the FOIA. *SDC Dev. Corp. v. Mathews*, 542 F.2d 1116, 1117 (9th Cir. 1976). The *SDC Development* Court recognized "a qualitative difference between the types of records Congress sought to make available to the public by passing the Freedom of Information Act and the library reference system sought to be obtained here." *Id.* at 1120. The Court elaborated as follows:

> The library material does not directly reflect the structure, operation, or decision-making functions of the agency, and where, as here, the materials are readily disseminated to the public by the agency, the danger of agency secrecy which Congress sought to alleviate is not a consideration.

14

> As already noted, moreover, the statutory mandate of the National Library may be substantially impaired if it is not permitted to charge for use of its retrieval system as expressly authorized by the National Library of Medicine Act.

*Id.*

The above courts "focused on how the agency used the requested material." *Baizer*, 887 F. Supp. at 228. The *Baizer* Court succinctly summarized the distinction as follows:

> If an agency integrates material into its files and relies on it in decision making, then the agency controls the material. If, on the other hand, material is maintained solely for reference purposes or as a research tool, then the indicia of control are lacking.

*Id.* Considering *Tax Analysts, Judicial Watch*, *SDC Development Corp*, and *Baizer* together it is apparent that a court cannot conclude that "control" exists merely because records "have come into the agency's possession in the legitimate conduct of its official duties." *Tax Analysts*, 492 U.S. at 145. In all four cases the agency came into possession of the requested materials in the legitimate conduct of its official duties, and each court made its ultimate determination of "control" on how the agency used or did not use the requested materials.

The DOJ acted as a mere conduit between EDMC and Relators' counsel at McKool Smith. EDMC delivered the Hard Drives to the DOJ pursuant to discovery requests. The DOJ states that it did not access the materials from the Hard Drives. As explained by the DOJ, when the DOJ received the Hard Drives it delivered them to McKool Smith, where the materials were uploaded from the Hard Drives onto an electronic information review platform. The DOJ states that at no time did the DOJ have access to EDMC Hard Drive materials on the McKool Smith electronic review platform. Compared to the AI Dallas CD materials, which were uploaded into the DOJ's electronic case file by lead counsel for the DOJ, the EDMC Hard Drive materials were never made accessible electronically or in hard copy form to the DOJ. What the DOJ possessed

at the time of the FOIA request was the actual hard drives, less two that had already been destroyed, that McKool Smith had returned to the DOJ after uploading the materials.  The DOJ did not maintain the materials for reference purposes or as a research tool, the DOJ's possession was less than that.  Once the litigation had settled and McKool Smith had transferred the hard drives to the DOJ, the DOJ maintained the hard drives in storage awaiting return to EDMC. Under this description of the materials, they are akin to the Freddie Mac and Fannie Mae documents transferred to the FHFA for storage.  Both agencies came into possession of the materials in the legitimate conduct of other official business, but neither had read or relied on the documents in the course of their official duties, they just held the materials.  Under these circumstances the Court concludes that at the time of the Project's FOIA request the EDMC Hard Drive materials were not "agency records" subject to the FOIA.

The Court's conclusion is supported by comparison to the AI Dallas CD materials.  The AI Dallas CD materials share many characteristics and qualities with the EDMC Hard Drive materials.  Since the DOJ concedes, however, that the AI Dallas CD materials do qualify as agency records responsive to the Project's FOIA request, there must be a difference between the materials to find one set constitutes agency records while the other does not.  That distinguishing characteristic is how the DOJ used, or did not use, each set of materials.[1]

---

[1] Based on the DOJ's arguments regarding the issue of "agency records" it is equally true of both the EDMC Hard Drive materials and the AI Dallas CD materials that (i) they were created by EDMC; (ii) they were produced by EDMC during discovery; (iii) EDMC allegedly retained a possessory interest in them; (iv) EDMC allegedly intended to retain control of them; (v) the protective orders allegedly limit the DOJ's ability to use and dispose of the materials; (vi) that the content of the documents would allegedly reveal nothing about the operation of the DOJ under the purposes of the FOIA; (vii) that the DOJ was not reading or reviewing the materials *at the time of the FOIA request* (although the timing of the FOIA request in this case is important); and (viii) they are EDMC produced business documents and related documents.  If any of these characteristics or combination of characteristics were determinative of the control issue the conclusion would necessarily apply to both the EDMC Hard Drive materials and the AI Dallas CD materials, but the DOJ does not make the same argument with respect to the AI Dallas CD materials.  That is why the Court focuses on the use of the materials as the distinguishing characteristic.

The DOJ uploaded the AI Dallas CD materials into the DOJ's electronic case file, and singled out certain documents from the CD to print, retain, comment upon, and circulate by email.  The DOJ's use of the AI Dallas CD materials in this manner qualifies as materials that once produced would "put within public reach the information available to an agency in its decision-making processes."  *Tax Analysts*, 492 U.S. at 145.  In contrast, the EDMC Hard Drive materials were not relied upon by the DOJ in its decision making process and therefore the DOJ "has not exercised the degree of control required to subject the document[s] to disclosure under FOIA."  *Judicial Watch*, 646 F.3d at 928.  Again, the difference between the DOJ's use of the EDMC Hard Drive materials and the use of the AI Dallas CD materials is the primary distinction in the Court's decision.[2]

The conclusion that the EDMC Hard Drive materials are not agency records is a close call.  The DOJ was engaged in prosecuting, along with the Relators, a massive False Claims Act case focusing on unlawful methods EDMC used to recruit students.  The reason why the DOJ sought to obtain the records in the first place was presumably to discover the logistics of how EDMC implemented its fraudulent student recruitment program.  The DOJ was involved in discovery requests, received the discovery, and delivered the discovery to its litigation partner.  The case eventually settled and it is reasonable to assume that EDMC's production of voluminous amounts of documents played a part in the ultimate settlement of the litigation.  The Court finds that at no time though did the DOJ read or rely on the discovery materials, and

---

[2] The Court notes that the fact that the hard drives contain electronically stored information is irrelevant to the analysis. The same analysis would apply if the EDMC discovery materials were produced to the DOJ as hard copies in sealed boxes, the boxes were transferred to McKool Smith without the DOJ reading or reviewing the contents, and the DOJ took possession of the boxes (re-sealed), again without reading or reviewing the contents.

significantly, at the time of the FOIA request the litigation had ceased and the DOJ was acting as a mere warehouse storing the EDMC Hard Drives, never having read or reviewed the materials. The Court finding that the EDMC Hard Drive materials are not agency records subject to FOIA,[3] the DOJ's withholding of the EDMC Hard Drive materials is therefore not "improper" and the Court is without "authority to order the production of such records."  *Kissinger*, 445 U.S. at 139.

### 2.  Unduly Burdensome

Even if the EDMC Hard Drive materials were agency records subject to FOIA it would be unduly burdensome to require the DOJ to search for and produce responsive records.  The DOJ explains with supporting affidavits that the Project's FOIA request with respect to the EDMC Hard Drive materials is unduly burdensome as the Hard Drives "contain over nine terabytes of electronically stored information (in compressed form), and [the DOJ] does not have the technological capability to process the data . . . to conform it to current specifications for review platforms, or to load, store, host, or review that volume of data on its servers."  Decl. of Michael Comber, Nov. 17, 2017, at ¶ 25 (Docket No. 44-1).   The nine terabytes of information

---

[3] The DOJ also argues that the EDMC Hard Drive materials cannot be agency records in part because of EDMC's continuing possessory interest in the materials and the limitations on the DOJ's use of the materials.  The DOJ's argument primarily relies on the fact that the materials were subject to protective orders that contemplated the return of the materials to EDMC.  The DOJ's argument relies on a case distinguishable from the present case.  In *Washington Post v. U.S. Dep't of Def.*, 766 F. Supp. 1, 17 (D.D.C. 1991), the Court held that a congressional hearing transcript was not an agency record because Congress had not "abandoned control" over the transcript but only provided it temporarily for the limited purpose of having a witness review, supplement, and identify classified material.  *Id.*  Here, EDMC did not transfer non-final documents to the DOJ for limited review with instructions to return the documents to EDMC.  EDMC transferred records responsive to discovery requests subject only to the protection of confidential information as described in the two protective orders.  The DOJ's argument is intertwined with the DOJ's separate argument that the protective orders by themselves render the DOJ's withholding of materials proper.  The Court considers the effect of the protective orders later in this Opinion but notes that the Confidentiality Protective Order allows the DOJ, at its discretion, to return or destroy the EDMC materials at the close of litigation.  Confidentiality Protective Order, ¶ 13.  Finally, if the DOJ's argument on this point was determinative of control, it would necessarily also apply to the AI Dallas CD materials, but the DOJ fails to argue that the AI Dallas CD materials are not agency records.

are alleged to contain approximately 20 million documents containing approximately 145 million pages.  Decl. of John Kornmeier, Nov. 17, 2017, at ¶ 7 (Docket No. 44-2); Comber Decl. at ¶ 11(a) (citing counsel for EDMC's Declaration of Matthew R. Divelbiss, ¶ 2, ECF No. 477-1, *United States ex rel. Washington v. Education Management Corp.*, No. 2:07-cv-461 (W.D. Pa. Feb. 2, 2017)).  Citing to recent figures of DOJ staff review of FOIA requests, the DOJ estimates that it would take approximately 460 years to conduct a page-by-page review of the materials. Kornmeier Decl. at ¶ 11.  This estimate contemplates devotion of a full staff to review the materials, which is not feasible in light of the current backlog of 1300 pending FOIA requests that would have to be ignored as well as all future FOIA requests.  *Id.* at ¶ 12.  According to Attorney Comber it would also be unduly burdensome for the DOJ "to process, store, and host the electronically stored information on the Hard Drives in order for that information to become reviewable."  Comber Decl. at ¶ 25.  He further states that even if the DOJ had access to store the data it does not have advanced software to review and redact that volume of information and even if it did the costs would be prohibitive.  *Id.*

"[A]gencies need not disclose records when conducting a search for requested materials would impose an unreasonable burden." *Long v. Immigration & Customs Enf't*, 149 F. Supp. 3d 39, 55 (D.D.C. 2015).  Courts "have held that agencies are excused from complying with FOIA requests where 'review[ing], redact[ing], and arrang[ing] for inspection [of] a vast quantity of material' presents an unreasonable burden." *Id.* at 55-56 (quoting *Am. Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990)).  "[W]hen an agency claims that complying with a request is unreasonable, it bears the burden to 'provide [a] sufficient explanation as to why such a search would be unreasonably burdensome.'" *Ayuda,*

*Inc. v. FTC*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014) (quoting *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 892 (D.C. Cir. 1995)).  "Among the factors that a court may consider in assessing the claimed burden are the amount of time, expense, and personnel that would be required to complete document searches and production, as well as whether the agency has the existing technology or would have to purchase new technology to perform those tasks." *Long,* 149 F. Supp. 3d at 55.

The affidavits provided by the DOJ have asserted good faith specific estimates as to the amount of documents involved, potential costs, and the time required to conduct the search.  *See Pinson v. DOJ*, 80 F. Supp. 3d 211, 216 (D.D.C. 2015) ("Where an agency has provided a good faith estimate of the excessive amount of time required to complete a search that it feels is unreasonably burdensome, this Court has upheld the agency's refusal to conduct the requested search").  There is ample precedent for a finding of undue burden in cases involving similar or comparatively less burdens.  *Nation Magazine*, 71 F.3d at 891–92 (requiring agency to search through 23 years of unindexed files imposed an unreasonable burden); *Am. Fed'n of Gov't Employees*, 907 F.2d at 208-09 (request requiring search of "every chronological office file and correspondent file, internal and external, for every branch office [and] staff office" was unreasonable); *Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enf't*, No. 16-CV-387 (KBF), 2017 WL 1494513, at *15 (S.D.N.Y. Apr. 19, 2017) (searching for and producing documents that could range from 436,000 to 1.3 million pages of records and take estimated 436 to 1,300 weeks is unreasonably burdensome); *Long*, 149 F. Supp. 3d at 56–58 (Defendants demonstrated that producing and redacting responsive documents requiring search and redaction of five terabytes of information would be unduly burdensome); *Ayuda,* 70 F. Supp.

20

3d at 275-76 (manual redaction estimated to take 8000 hours is unreasonably

burdensome); *Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. DHS*, 8 F. Supp.

3d 188, 203 (D. Conn. 2014) (unreasonably burdensome for agency to locate, review, and make

heavy redactions to 26,000 packets, each of which contained 50 pages); and *Hainey v. Dep't of*

*Interior*, 925 F. Supp. 2d 34, 45 (D.D.C. 2013) (unreasonably burdensome for agency to search

and review every email sent or received by 25 different employees throughout a two-year time

period).  In cases where courts have found that the agency's claim of undue burden to be lacking,

the affidavit is typically non-specific.  *See, e.g., Pinson*, 80 F. Supp. 3d at 217 (an affidavit

stating that the proposed search would be unreasonable and burdensome but failed to include

estimates of time, costs, or number of files to be manually searched was insufficient).

     The Project argues that the DOJ has failed to satisfy its burden of a substantial showing to

demonstrate that the request is unduly burdensome.  First, the Project questions the admissibility

and accuracy of the DOJ's statement that the EDMC Hard Drives contain 145 million potentially

responsive pages.  The Project argues that both the Comber and Kornmeier declarations

impermissibly rely on hearsay statements of counsel for EDMC regarding the approximate

amount of material on the EDMC Hard Drives.  The Court finds that the affiants properly relied

on information the attorneys learned during the course of their official duties.

> In the FOIA context, a declarant satisfies the personal knowledge requirement of
> Federal Rule of Civil Procedure 56(e) if, "in his declaration, [he] attest[s] to his
> personal knowledge of the procedures used in handling [a FOIA] request and his
> familiarity with the documents in question." *Hall v. Dep't of Justice,* 63 F. Supp.
> 2d 14, 16 n. 1 (D.D.C. 1999) (quoting *Spannaus v. Dep't of Justice,* 813 F.2d
> 1285, 1289 (4th Cir. 1987)) (brackets in original); *Schoenman v. FBI,* 575 F.
> Supp. 2d 166, 171–72 (D.D.C. 2008) (same). In addition, it is well settled that
> "FOIA declarants may include statements in their declarations based on
> information they have obtained in the course of their official duties." *Barnard v.*
> *Dep't of Homeland Sec.,* 598 F. Supp. 2d 1, 19 (D.D.C. 2009); *Thompson v. Exec.*

*Office for United States Attorneys,* 587 F. Supp. 2d 202, 208 n. 4 (D.D.C. 2008).

*Hainey,* 925 F. Supp. 2d at 41.  *See also Carney v. U.S. Dep't of Justice,* 19 F.3d 807, 814 (2d

Cir. 1994) ("affidavit from an agency employee responsible for supervising a FOIA search is all

that is needed to satisfy Rule 56(e)").  Counsel for EDMC is in the best position to provide

estimates of the amount of data contained on EDMC-produced hard drives and provided the

estimates in a court affidavit.  The declarations by attorneys Comber and Kornmeier are properly

"based on information they have obtained in the course of their official duties."  *Barnard,* 598 F.

Supp. 2d at 19. Accordingly, the Project's objection to the declarants' reliance on counsel for

EDMC's approximate estimates of the amount of data involved is not persuasive.

Turning to the accuracy of the amount of data, the Project argues that the estimate cannot

be accurate because it includes the amount of data on two hard drives that were destroyed by the

McKool Smith law firm, but would not be a part of any DOJ search of the materials the DOJ

presently possesses.  This may be true but it does not undermine the DOJ's affiants' testimony as

to what EDMC's counsel stated was the approximate amount of data that was electronically

provided on hard drives.  In any event, the amount of data included is so vast that even a 99%

reduction in the quantity of data to be searched, as suggested by the DOJ, would still lead to the

conclusion that it would be an unduly burdensome search as there would still be approximately

1.45 million pages of documents for the DOJ staff to review.

The Project also challenges the DOJ's factual basis for its claim that a search would be an

undue burden.  The Project argues that the DOJ's statement that it must search each document on

the Hard Drives is not factually supported because there are other methods the DOJ could use to

narrow the scope of documents to be reviewed.  Specifically, the Project suggests that the DOJ

22

could use the production cover letters EDMC provided to the DOJ during discovery, employ

search terms and predictive coding, and make use of the documents' metadata to eliminate

duplicates.  These suggestions, while reasonable, are unavailing to undermine the DOJ's claims

of undue burden. Yet, implementation of these suggestions presupposes that the DOJ has an

appropriate and affordable electronic information review platform.  Here, the DOJ has stated that

it does not currently have such a platform, and that the cost of such a platform is prohibitive.

The Project's suggestions are predicated on employing methods designed to reduce the

time it takes to search, the amount of data to be reviewed, and the time it takes to review the

targeted documents.  Again, the quantity of material at issue here is so vast that even if the DOJ

could successfully employ the methods suggested by the Project and reduce the amount of

material, as indicated above, by 99%, the task would still be unduly burdensome.  Accordingly,

assuming the materials are agency records, the Court finds that the DOJ has demonstrated that

responding to the Project's FOIA request as it relates to the EDMC Hard Drive materials would

be unduly burdensome.

### B.  DOJ's Search and Withholding of Responsive Records Found in the Search

Separate and apart from the EDMC Hard Drive materials the DOJ performed a search of its

records in response to the Project's FOIA request.  Subsequently, the DOJ produced a *Vaughn*

index of withheld material, with justifications for non-disclosure, as required under *Vaughn v.*

*Rosen,* 484 F.2d 820 (D.C. Cir. 1973).  Vaughn Index, Nov. 17, 2017 (Docket No. 44-3).  The

search resulted in six documents found in the hard copy EDMC litigation case file; the AI Dallas

CD materials, consisting of approximately 3,600 pages of documents in the electronic case file;

and five documents found as attachments to emails.  The Project challenges the adequacy of the

search and the DOJ's withholding of the materials uncovered by the search.

### 1. Adequacy of Search

"In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "There is no requirement that an agency search every record system." *Id.* "In order to establish the adequacy of a search, agency affidavits must be . . . 'relatively detailed and non-conclusory, and ... submitted in good faith.'" *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C. Cir. 1981)). "The court may rely on a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Mobley v. C.I.A.*, 806 F.3d 568, 580–81 (D.C. Cir. 2015) (quoting *Oglesby*, 920 F.2d at 68). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard*, 926 F.2d at 1200 (quoting *Ground Saucer Watch,* 692 F.2d at 771).

The DOJ provided an affidavit explaining that it searched for responsive records in the hard copy case file for the EDMC litigation; the electronic case file for the EDMC litigation, and the email archives of the three attorneys involved in the EDMC litigation as the people and locations that could reasonably be expected to possess records responsive to the Project's FOIA request.  Comber Decl. ¶¶ 10-14.  The DOJ searched the Civil Division of the United States Attorney's Office for the Western District of Pennsylvania as that office was where the EDMC

24

litigation arose and was handled, and that office and division did not share or transmit documents or information received from EDMC during discovery with any other United States Attorney's Office or within the Western District office.  Comber Decl. ¶¶ 10-13.  Within the Civil Division the DOJ determined that only lead trial counsel Deputy Chief Christy C. Weigand, co-counsel Assistant United States Attorney Colin J. Callahan, and Civil Chief and settlement counsel Michael A. Comber, "and no support staff, paralegals, or other attorneys," could reasonably be expected to possess records potentially responsive to the Project's FOIA request.  Comber Decl. ¶ 13.

The DOJ conducted a manual search of the hard copy case file resulting in finding six documents produced by EDMC in discovery, which the DOJ has denoted as non-responsive to the FOIA request because they contain handwritten attorney notes.  Comber Decl. ¶ 15.  The DOJ's search of the electronic case file yielded the documents contained on the AI Dallas CD. Comber Decl. ¶ 16.

The DOJ's search of the electronic mail archives was limited to searching emails with attachments, as the FOIA request concerned discovery documents produced by EDMC, it was reasonable to expect that such externally provided documents would only appear in email archives as an attachment.  Comber Decl. ¶ 17(a).  The email search was also limited to emails to or from the three attorneys working on the litigation and between EDMC's outside counsel at Jones Day, Relator's counsel at McKool Smith, and the Special Master and his law clerk. Comber Decl. ¶17(b).   Specifically, the search of the email archives extended to emails that were to, from, or copied to or from, the JonesDay.com and McKoolSmith.com domains, and the email addresses for the Special Master and his law clerk.  Comber Decl. ¶17(b).

25

The DOJ also limited the time frame of its search of the email archives to a period between May 2, 2014, through November 16, 2015.  Comber Decl. ¶ 17(c).   The DOJ explained that from a review of the case file it determined that potentially responsive materials would not have been transmitted by email either before May 2, 2014, even though EDMC produced external media by hand delivery on October 15, 2013, or after November 16, 2015, the date of execution of the settlement agreement.  Comber Decl. ¶ 17(c).  The DOJ's search of the electronic mail archives yielded copies of five documents produced by EDMC during discovery that were emailed among counsel.  Comber Decl. ¶ 17.  CSMF ¶¶ 33-35.

The Court concludes that the DOJ has provided "reasonably detailed" affidavits setting forth its search parameters and how the search was performed and that adequately show "that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68.  The Project has not provided persuasive "'countervailing evidence' as to the adequacy of the agency's search.'"  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003).

The Project challenges the DOJ description of its search of electronic mail archives for failing to disclose search terms or how the search was conducted; for inadequately explaining why the search was limited to no earlier than May 2, 2014; for failing to adequately explain why the search was limited only to certain employees and non-governmental persons who worked on the EDMC litigation; and for failing to search for emails sent between DOJ attorneys and between DOJ attorneys and attorneys for all other parties involved in the EDMC litigation.

The Project's complaint that the DOJ failed to disclose search terms or how the search was conducted is unpersuasive.  The DOJ's stated limitations as set forth above are a description

of how the search was conducted.  The DOJ reasonably explained that it limited its search to email attachments and that it limited its search to certain domains and a date range.  The DOJ searched the limited domains within the stated time frame for emails containing attachments, and then once it found the emails with attachments it viewed those attachments to see if it was responsive to the Project's FOIA request.  The DOJ's search of the email archives resulted in finding five documents produced by EDMC during discovery.

The Project's complaint that the DOJ inadequately explained the May 2, 2014 date limitation rests on speculation.  The Project points to letters from counsel for the DOJ dated April 10, 2014, and January 22, 2014, that reference or describe discovery documents, to assert that maybe the referenced discovery documents "might be contained" in the email archives prior to May 2, 2014.  Docket No. 48, at 30.  As noted, the DOJ acknowledged that it did receive EDMC discovery as early as October 13, 2013, but that it had reviewed the case file and concluded that no discovery document would have been transmitted by email prior to May 2, 2014.  The Project's pointing to letters that acknowledge the same fact - that discovery had occurred prior to May 2, 2014 - does not counter the DOJ's assertion that no email transmission of discovery documents would have occurred prior to May 2, 2014.

Finally, the Court concludes that the DOJ's email archive search was reasonably limited to the three attorneys involved in the EDMC litigation in the Civil Division of the United States Attorney's Office for the Western District of Pennsylvania, and the scope of the search included domains reasonably calculated to uncover documents responsive to the FOIA request.  Despite the massive amounts of discovery material produced by EDMC, it is reasonable that the DOJ itself, having transferred the Hard Drive materials to McKool Smith, would only have limited

27

discovery documents available in its hard case file, email archives, and electronic case file.  The

Court concludes that the Project's challenges to the search rest largely on "speculation that as yet

uncovered documents may exist."  *SafeCard*, 926 F.2d at 1201.  Accordingly, the Project has not

overcome the presumption of good faith afforded the DOJ's supporting declarations.  *Id.* at 1200.

### 2.   Documents Found in Hard Copy Case File and Email Archives

As noted, the DOJ uncovered eleven potentially responsive documents through its search

of email archives and the hard case file.  The six documents found in the hard case file are copies

of EDMC discovery documents produced on the AI Dallas CD.  Def. Br. Supp. at 20 (Docket

No. 42); Comber Decl. ¶ 15.  These copies contain handwritten notes of counsel, and are being

withheld, in part, based on the work product doctrine.  Def. Br. Supp. at 20-21; Def. Br. Opp. at

8 (Docket No. 65); Def. Surreply Br. at 11 (Docket No. 76); Comber Decl. ¶ 15.  The five

documents found in the email archives are also copies of EDMC discovery documents.  Def. Br.

Supp. at 22.  The DOJ is withholding four of the five documents based on the work product

doctrine asserting that the documents were emailed among counsel.  Comber Decl. ¶ 17; Def. Br.

Opp. at 8-9; Def. Surreply Br. at 11.  The DOJ provides no further explanation as to how

emailing a discovery document produced by an opposing party, without more, demonstrates

litigation work product.  The fifth document is a copy of an EDMC produced discovery

document that is listed on the *Vaughn* index at entry 90, and apparently is being withheld solely

on the basis of the Confidentiality Protective Order and under seal designation.  Def. Br. Opp. at

9; Def. Surreply Br. at 11; Vaughn Index, at 14, Entry 90.

The DOJ does not concede that any of the documents are agency records responsive to the

Project's FOIA request because they were not directly produced from EDMC to the DOJ in

response to specific discovery responses.  The DOJ argues that these documents are derivative, that is, they are copies of documents produced by EDMC during discovery.  The Project properly argues that there is no basis for the DOJ to withhold the documents simply because they are copies of documents.  Although the DOJ may have other reasons for withholding the documents, the DOJ has not cited to any authority that would allow the DOJ to withhold copies of documents responsive to the FOIA request *merely* because they are copies.  The DOJ is not being asked, much less compelled, to uncover *every* copy of a responsive document even once it has produced (or withheld) the original.  Here the DOJ has not turned over any documents at all. The Court rejects the DOJ's argument that withholding of copies of responsive documents by itself is a proper justification for withholding a document under the FOIA.

With regard to the six documents that contain handwritten attorney notes reflecting the mental impressions of counsel, the Project argues that the DOJ is required to provide a more detailed basis for the privilege.  The Court disagrees.  A discovery document with counsel's handwritten notes on it is *prima facie* evidence that the document is work product.  It is unclear what further description the Project would have the DOJ provide that would not be stating the same privilege in different words, or else compelling the DOJ to reveal the mental impressions of its attorneys.  The DOJ has sufficiently identified that the documents contain handwritten notes of counsel, nothing would be added by compelling the DOJ to also state that such notes reflect professional opinions regarding the document or its impact on the litigation.

The DOJ could possibly provide a detailed description of the document itself; *i.e.*, describe the EDMC document that an attorney wrote on, but that would not help the Project determine whether the claim of privilege is legitimate.  The DOJ has identified the document as

an EDMC document produced during discovery.  The DOJ concedes that the original document without handwritten notes is responsive to the FOIA request, and the original is not protected by the privilege.  Accordingly, the DOJ's claim of work product privilege for these six documents is upheld.

The same cannot be said about the four documents emailed among counsel.  The Court is aware of no work product protection, without further explanation, that protects from disclosure an opposing party's discovery document solely because counsel passed it along to co-counsel. The DOJ is not being asked to produce the content of any email, just the EDMC produced discovery document. The DOJ's claim of work product privilege for the four emailed documents is denied.  The DOJ has invoked no claim of privilege for withholding the fifth document found in the email archives, and that document is responsive to the FOIA request and must be turned over unless it cannot be due to the protective orders.

### C.  Protective Orders

The DOJ identifies the AI Dallas CD materials as agency records responsive to the Project's FOIA request, but argues that the materials are properly withheld due to the protective orders.  A subset of the AI Dallas CD documents has been designated as being withheld pursuant to FOIA exemption 6 to protect the personally identifiable information of students.  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The DOJ acknowledges that although it would be possible to produce the non-exempt portions of such documents with the personal information redacted, the DOJ must withhold even the non-exempt portions because of the protective orders.  The DOJ's argument relying on the protective orders

as a basis for withholding documents encompasses all FOIA-requested documents, no matter whether the FOIA-requested documents are subject to withholding for any other reason.  Thus, the DOJ argues that all documents at issue in this case are properly withheld because they are subject to the protective orders entered in the EDMC litigation.  The DOJ argues that applicable case law demonstrates that where a court limits an agency's discretion such that the agency is prohibited from disclosing responsive records, the agency does not improperly withhold the requested materials.

The United States Supreme Court has held that it was error to permit a FOIA-requester to obtain requested materials "when the agency with possession of the documents has been enjoined from disclosing them by a Federal District Court."  *GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375, 384 (1980).  The Court explained as follows:

> To construe the lawful obedience of an injunction issued by a federal district court with jurisdiction to enter such a decree as "improperly" withholding documents under the Freedom of Information Act would do violence to the common understanding of the term "improperly" and would extend the Act well beyond the intent of Congress.

*Id.* at 387.  Under *GTE Sullivan* "an agency does not abuse its discretion under the FOIA by honoring a court order enjoining the agency from releasing records because in such a case there 'simply [is] no discretion for the agency to exercise.'" *Morgan v. U.S. Dep't of Justice*, 923 F.2d 195, 196–97 (D.C. Cir. 1991) (quoting *GTE Sullivan*, 445 U.S. at 386).  "Although *GTE Sylvania* dealt with the situation of a court-ordered injunction, its core holding has not been so limited.  Rather, where a court order circumscribes an agency's ability to produce documents such that the agency has 'no discretion' to release the documents, the agency's failure to release documents will not be deemed improper."  *Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec.*

31

*Agency*, 113 F. Supp. 3d 313, 335 (D.D.C. 2015) (citing cases).  The *Morgan* Court stated its

holding as follows:

> the mere existence of a court [order] is, without more, insufficient to justify
> nondisclosure under the FOIA.  Instead, only those [] orders intended to operate
> as the functional equivalent of an injunction prohibiting disclosure can justify an
> agency's decision to withhold records that do not fall within one of the specific
> FOIA exemptions.

*Morgan*, 923 F.2d at 199.

To determine whether a court order or seal works to prohibit an agency from disclosing

records a court may be required to make further inquiry as to the intent of the court who issued

the order or seal.  *Id.* at 197.  In *Morgan*, the D.C. Circuit remanded the case to the District Court

for "determination of whether the court had issued the seal with the intent to prohibit the DOJ

from disclosing [requested records] so long as the seal remains in effect."  *Id.* at 198.  A court

may determine intent by referring to (1) the order itself; (2) "extrinsic evidence . . .casting light

on the factors that motivated the court to" enter the order; (3) other "orders of the same court in

similar cases"; and (4) "the court's general rules on procedures governing" such orders.  *Id.*

"Ultimately, 'the proper test for determining whether an agency improperly withholds records

[subject to a court order] is whether the [order], like an injunction, *prohibits* the agency from

disclosing the records.'" *Id.* (quoting *Morgan*, 923 F.2d at 197 (emphasis in original)).

The DOJ argues that both EDMC protective orders prohibit the DOJ from disclosing any

potentially responsive documents, and therefore there is no improper withholding.  Analyzing the

protective orders under the applicable case law demonstrates that the DOJ is incorrect.  "Merely

stating that responsive records are subject to a court order or other restriction is insufficient to

demonstrate that 'the court issued the [order] with the intent to prohibit the agency from

disclosing the records,' as required under the *Morgan* standard." *Agility Publishing*, 113 F.

Supp. 3d at 335 (citing *Morgan*, 923 F.2d at 198).

### 1. Confidentiality Protective Order

The DOJ argues that it is prohibited from disclosing potentially responsive documents

because of the Confidentiality Protective Order's requirement that "Confidential Material may be

disclosed only to . . . Qualified Persons." Confidentiality Protective Order ¶ 4.  Applying the

above principles to this case, the Court concludes that the Confidentiality Protective Order does

not operate as a prohibition on the DOJ's ability to disclose the records in the same way as the

injunction in *GTE Sullivan*.  The Confidentiality Protective Order explicitly anticipates requests

for disclosure of material designated as Confidential by a third party, such as the Project, and

provides a procedure for disclosure of the documents.  Confidentiality Protective Order ¶ 7.  The

Confidentiality Protective Order provides that "[i]n the event of a request by a third party for

disclosure of Confidential Material," the receiving party (in this case the DOJ) shall provide the

third party with a copy of the Confidentiality Protective Order, and then proceed to contact the

designating party (in this case EDMC) who is given ten days to seek a protective order to contest

the production of the Confidential Materials.  *Id.*

In this case the content of the Confidentiality Protective Order itself demonstrates that

the EDMC Court did not issue the orders with the intent to *prohibit* the DOJ from ever disclosing

the records.  The EDMC Court anticipated that a third party may request material designated as

confidential and therefore provided a mechanism that would permit the agency to disclose the

records.  In fact, the Confidentiality Protective Order *requires* that upon a third party's request,

the DOJ must initiate certain actions.  The DOJ must notify EDMC that a third party has

33

requested the materials so that EDMC may, if it chooses, seek a further protective order. Significantly, if the DOJ complies with its duties under the Confidentiality Protective Order, and EDMC does not file a motion seeking a further protective order, the DOJ "may produce the requested Confidential Material." Confidentiality Protective Order ¶ 7.

In addition, the Confidentiality Protective Order focuses on protection of properly designated "Confidential Material," which the Order specifically defines as "information protected by federal or state statute or regulation, personal identification information (e.g., social security number, date of birth), personnel information (e.g., employee employment records and compensation), financial, proprietary, and trade secret information that is produced by any party or third party and denominated by the producing party, in good faith, as 'Confidential.'" Confidentiality Protective Order ¶ 1. Thus, unlike an injunction that enjoins a party from releasing a document, the Confidentiality Protective Order only purports to protect "Confidential Material" contained within documents. Under these facts, the Court cannot conclude that the Confidentiality Protective Order "prohibits" the DOJ from disclosing the records. *See Morgan*, 923 F.2d at 197 (noting mere existence of seal without inquiring into its intended effect is not sufficient); *Judicial Watch*, 813 F.3d at 383 (test for determining whether an agency has improperly withheld records placed under seal requires court to examine factors including, but not limited to, the explicit order).

## 2. FERPA Protective Order

The DOJ similarly argues that it is prohibited from disclosing documents under the FERPA Protective Order based on that Order's provision that "[n]o disclosure of FERPA

34

Confidential Material shall be made to any person unless that individual is authorized to receive

such FERPA Confidential Material pursuant to the terms of this Order."  EDMC Litigation,

Docket No. 255, ¶ 5.   The DOJ argues that this language prohibits the DOJ from disclosing the

documents designated as FERPA Confidential.  The FERPA Protective Order, however, only

prohibits the DOJ from disclosing the personally identifiable information (or FERPA

Confidential Material) *contained in* documents designated as FERPA Confidential.

> Examination of the FERPA Protective Order demonstrates that the intent of the court in

issuing the order was to "protect personally identifiable information from education records

subject to the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, and

ensure that protection is afforded to material so entitled."   EDMC Litigation, Docket No. 255, at

1 (preamble).  Throughout the FERPA Protective Order it is evident that the Court's concern is

with protecting personally identifiable information about students and their families from

education records subject to FERPA, referred to as "FERPA Confidential Material."  It is only

FERPA Confidential Material that the Order seeks to protect from disclosure, and therefore the

Court explicitly prohibits "disclosure of FERPA Confidential Material . . . to any person unless

that individual is authorized to receive such FERPA Confidential Material pursuant to the terms

of this Order."  EDMC Litigation, Docket No. 255, ¶ 5.

> The FERPA Protective Order also allows the DOJ discretion to disclose the documents

with appropriate redactions.  Demonstrating that the EDMC Court was concerned only with

protection of personally identifiable student information, the FERPA Protective Order's express

terms provide for the redaction of the "FERPA Confidential Material contained in documents"

when documents containing such material were to be used during a deposition.  EDMC

Litigation, Docket No. 255, ¶ 7.   Thus, the Court contemplated that a document containing

FERPA Confidential Material may be used during a deposition, but only provided for protection

of the actual FERPA Confidential Material, not the entire document.

The FERPA Protective Order also contemplates that if a document containing FERPA

Confidential Material is submitted to the Court, or reproduced in court filings, that the document

or filing "or portions thereof containing FERPA Confidential Material" must be placed under

seal.   EDMC Litigation, Docket No. 255, ¶ 9.   Finally, the FERPA Protective Order protects

FERPA Confidential Material from disclosure by providing that before such information is

presented in court filings or proceedings the parties "shall consider (i) redacting confidential

documents to remove personally identifiable information about students and their families, (ii)

coding the documents to substitute a numerical or other designation for the student's name or

other identifiable information about the student or his/her family, or (iii) introducing summary

evidence where practicable which may be more easily redacted."   EDMC Litigation, Docket No.

255, ¶ 11.

By explicitly and narrowly focusing on protection of only FERPA Confidential Material

contained within a document, the EDMC Court has demonstrated its intent was solely with

protecting the student private information, not the portions of the document that do not contain

FERPA Confidential Material.   The Court cannot conclude that the FERPA Protective Order

"circumscribes [the] agency's ability to produce documents such that the agency has 'no

discretion' to release the documents."   *Agility Publishing*, 113 F. Supp. 3d at 336.   As detailed

above, the FERPA Protective Order only prohibits disclosure of personally identifiable

information, not the documents themselves.   The FERPA Protective Order was concerned with

the production of FERPA Confidential Material during discovery in the EDMC litigation.  Given the FERPA Protective Order's explicit focus only on a discrete type of information contained within documents, it would be a narrow reading of the Order to interpret the EDMC Court's intent as seeking to prohibit disclosure of Non-FERPA Confidential Material.  Therefore, the DOJ may produce the documents containing the FERPA Confidential Material so long as the FERPA Confidential Material is redacted and otherwise complies with the FERPA Protective Order.

Production of documents containing FERPA Confidential Material or Confidential Material under the Confidentiality Protective Order is dependent on the same limits as production of documents under Exemption 6 of the FOIA to the extent the document contains personally identifiable information.  "Any reasonably segregable portion of a record shall be provided [to a FOIA-requester] after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  In all cases, personal and confidential information need not be released and must be appropriately redacted before the document is disclosed.

It is unclear whether any of the documents the DOJ designates as being "under seal" in the EDMC Litigation were placed under seal for reasons separate and apart from a designation under either the Confidentiality Protective Order or the FERPA Protective Order.  To the extent that the only reason such documents were placed under seal was pursuant to the protective orders then the analysis above applies with the addition that the DOJ must seek permission to unseal the documents, except for information contained within the document that would be subject to redaction under the analysis above.  To the extent that documents were placed under seal for some other reason, the Court is without sufficient information at this time to determine whether

such a document should be disclosed.

The Project will be permitted to pursue its FOIA request as to the AI Dallas CD materials, the five documents found in the email archives, and the documents listed on the *Vaughn* index in accordance with the protective orders filed in the EDMC litigation, and if necessary, the filing of an appropriate motion (or renewal of an existing motion) in *United States ex. rel. Washington v. Education Management LLC*, No. 2:07-cv-461.

### D.   The Project's Motion to Strike and for Discovery

In the Project's Motion in the Alternative for Discovery Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure (Docket No. 52), the Project sought limited discovery to challenge the DOJ's search and the DOJ's assertions as to why it would be unduly burdensome to search and review the EDMC Hard Drive materials.  This motion is denied, as moot, in light of the Court's resolution of the cross-motions for summary judgment.

The Project's Motion to Strike Statements from the Declarations of John Kornmeier and Michael A. Comber (Docket No. 54), will be granted to the extent that the Court did not consider legal conclusions contained within said affidavits, and is denied in all other respects.

### V.      Conclusion

For the foregoing reasons the Court finds the EDMC Hard Drive materials are not "agency records" under the FOIA, and therefore the DOJ did not improperly withhold such records.  Even if the materials were deemed to be "agency records" it would be unduly burdensome for the DOJ to search and produce such materials.  The Court further finds that the DOJ's search for responsive records was sufficient, that the DOJ properly invoked the work product doctrine as to six documents found in the hard case file, and the DOJ improperly

38

invoked the privilege with respect to four documents that were emailed among counsel.  The

Court also concludes that the protective orders entered in the EDMC litigation do not prohibit the

DOJ's ability to disclose responsive documents in accord with the procedures and requirements

of the protective orders.  Accordingly, Defendant's Motion for Summary Judgment (Docket No.

41) will be granted in part and denied in part, and Plaintiff's Cross-Motion for Summary

Judgment (Docket No. 47) will be granted in part and denied in part.

An appropriate Order follows.


By the court:


*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge


Dated:  July 9, 2018

cc/ecf:  All counsel of record.

39